Mamie NEWTON, individually and on behalf of all other persons similarly situated, Plaintiff,

v.

SOUTHERN WOOD PIEDMONT COMPANY, Rayonier, Inc., formerly ITT Rayonier, Inc., and ITT Corporation, Defendants.

SOUTHERN WOOD ASSOCIATION FOR MEDICAL PROBLEMS ("SWAMP"), an unincorporated association of Richmond County, Georgia, suing individually on behalf of its members and future members and all persons similarly situated, Plaintiff,

v.

ITT CORPORATION, ITT Rayonier Inc., Southern Wood Piedmont Company, Defendants.

No. CV 194–112, CV 193–150.

United States District Court, S.D. Georgia, Augusta Division.

Sept. 29, 1995.

Harry Blackshear James, III, William Robert McCracken, Augusta, GA, for Southern Wood Association for Medical Problems.

Benjamin L. Weinberg, Jr., David A. Sapp, Michele L. Davis, Ronald R. Coleman, Jr., Long, Weinberg, Ansley & Wheeler, Atlanta, GA, for ITT Corporation, Southern Wood Piedmont Company.

David A. Sapp, Michele L. Davis, Ronald R. Coleman, Jr., Long, Weinberg, Ansley & Wheeler, Atlanta, GA, for Rayonier, Inc. in No. CV 193–150.

William Robert McCracken, Augusta, GA, for Mamie Newton.

Benjamin L. Weinberg, Jr., David A. Sapp, Michele L. Davis, Ronald R. Coleman, Jr.,

Long, Weinberg, Ansley & Wheeler, Atlanta, GA, for Rayonier, Incorporated in No. CV 194–112.

## ORDER

BOWEN, District Judge.

Before the Court in both of the above-captioned matters are Motions by the Plaintiffs for Class Certification and Motions by the Defendants for Summary Judgment or, in the alternative, Motions to Dismiss. Upon consideration of the briefs presented by opposing counsel and arguments heard before this Court on July 19, 1995, Motions by the Plaintiffs for Class Certification in both cases are hereby **DENIED** and Defendants' Motions for Summary Judgment are hereby **GRANTED** for the reasons stated below.[1]

### I. Background

These two cases represent the latest episodes in a series of lawsuits brought against the Defendants. The Defendants are corporations that have owned or operated the Southern Wood Piedmont plant site located at 1650 Nixon Road in Augusta, Georgia, which housed wood preserving facilities since the 1920's. Defendant Southern Wood Piedmont Company is a corporation organized under Delaware law with its principal place of business in South Carolina; Defendant Rayonier, Inc. is a corporation organized under Delaware law with its principal place of business in Connecticut; and Defendant ITT Corporation is a corporation organized under Delaware law with its principal place of business in New York.

Since 1987, Defendants have litigated various personal injury and property damage claims stemming from wood preserving activities at their Nixon Road plant site. In July of 1987, a set of plaintiffs filed *Marshall, et al. v. Southern Wood Piedmont, et al.*, Civil Action No. CV 187–121, seeking property damages and medical monitoring. Mamie

---

1. The present two cases are the most recent chapters in litigation that has taken place in this Court for the last eight years. Both cases have required exhaustive and extensive discovery and pre-trial activities and have demanded a great deal of time of the court and the attorneys in-

volved with them. At this juncture, it would be both impractical and inequitable to permit the supplementation of named class representatives. Therefore, dismissal of the cases is the only appropriate remedy on the existing record.

Newton, who is the named class representative for the first of the above-captioned matters, was a party to that suit. In June of 1990, the parties to that action entered into a settlement agreement releasing the Defendants from **"any and all claims that are or could have been asserted in the present litigation."** Settlement Agreement, filed June 15, 1990. Mamie Newton received $6,000.00 as her portion of the settlement of that case.

The same Mamie Newton filed another lawsuit in July of 1989 in the State Court of Richmond County, Georgia, which was later removed to this Court. *Mamie Newton, et al. v. Southern Wood Piedmont, et al.,* Civil Action No. CV189–167. In that lawsuit, Mamie Newton advanced personal injury claims against the Defendants, most notably claiming that her exposure to the operations of Southern Wood Piedmont had caused her certain skin problems and rashes. Mamie Newton claimed other health problems resulting from the activities of the Defendants as well, including gall stones, blackout spells, vision problems, high blood pressure, heart trouble, tooth loss, hair loss, a nervous condition, and headaches. *See* Interrogatory Responses in *Mamie Newton v. Southern Wood Piedmont,* Civil Action No. CV 189–167, No. 4. On November 22, 1991, this Court granted summary judgment against Newton's claims for personal injury. Order granting Defendants Summary Judgment in *Mamie Newton v. Southern Wood Piedmont, et al.,* 1991 WL 717190 (S.D.Ga. Nov. 22, 1991).

Finally, a set of three other lawsuits were filed in this Court from 1988 to 1989. *Roberts, et al. v. Southern Wood Piedmont,* Civil Action No. CV188–14; *Bilton, et al. v. Southern Wood Piedmont,* Civil Action No. CV189–17; *Ball, et al. v. Southern Wood Piedmont,* Civil Action No. CV189–158. Plaintiffs in these lawsuits lived in an area allegedly contaminated by the Defendants and advanced claims for property damage and medical screening. In June of 1990, the Defendants settled these three lawsuits with an agreement binding a group of over 200 property damage claimants and over 60 medical screening claimants. The settlement agreement for the property damage plaintiffs

provided a **"complete, total and final settlement and satisfaction of all individual claims asserted or that could have been asserted"** in the action. Settlement Agreement concerning Property Damage, June 21, 1990. Likewise, the medical screening settlement provided that each plaintiff not exhibiting any symptoms related to exposure to the chemicals used by the Defendants renounced **"any claim he or she has or may have had."** Settlement Agreement concerning Medical Screening, June 21, 1990.

In each of the aforementioned "settled" cases, the Plaintiffs were represented by competent, zealous counsel. Also, in each instance the amount of money paid in settlement by the Defendants was substantial.

The present two cases set forth claims again stemming from the Defendants' allegedly hazardous activities at the Nixon Road plant site. Both suits involve personal injury claims advanced by the named representatives and putative classes. The factual background underlying each case is outlined separately below.

### Case # 1: Mamie Newton v. Southern Wood Piedmont, et al.

Plaintiff and proposed class representative Mamie Newton is a resident of Richmond County, Georgia. Plaintiff brings this proposed class action on behalf of other similarly situated parties who have been exposed to toxic and hazardous substances used by Defendants in their wood preserving operations. Plaintiff alleges that Defendants have used various chemicals in their operations, including creosote, zinc meta arsenate, pentachlorophenol, and copper chromated arsenate. Plaintiff lives on nearby land and claims that the Defendants' use of these chemicals in their wood preserving activities has released toxic and hazardous substances into the air, soil, and groundwater, causing personal injury to her and the members of the putative class. Specifically, proposed class representative Mamie Newton claims that she suffers from an *arsenical keratosis,* as well as other health disorders, all of which she claims are the result of exposure to toxic substances generated by the Defendants' activities.

Plaintiff seeks certification of a class on behalf of others who have personal injuries

allegedly resulting from the activities of the Defendants at its wood preserving facilities. In support of its motion for class certification, Plaintiff proposes the following class definition:

> All persons who have sustained personal injuries, have specifically evidenced a keratosis, and who have been exposed to the chemicals released from and emanating from the Southern Wood Piedmont facility in Richmond County, Georgia.

Memorandum in Support of Plaintiff's Motion for Class Certification, p. 2 (October 21, 1994) (emphasis added).

### Case #2: SWAMP v. Southern Wood Piedmont, et al.

Plaintiff and proposed class representative Southern Wood Association for Medical Problems (hereinafter "SWAMP") is an unincorporated association of Richmond County, Georgia, suing on behalf of its members and future members as well as all other similarly situated plaintiffs. Although the precise composition of its membership is unclear, SWAMP's membership consists primarily of residents of Richmond County who live within a two mile radius of the Southern Wood Piedmont facility. Plaintiff's Complaint in Class Action, p. 6, No. 15. SWAMP alleges that Defendants have used various chemicals in their operations, including creosote, zinc meta arsenate, pentachlorophenol, and copper chromated arsenate. Plaintiff alleges that these chemicals and others were discharged at the Defendants' plant site into the water, ground and air, exposing members of the putative class to these chemicals.

The membership of SWAMP, "although its members may not have been diagnosed with specific personal injuries as a result of these exposures, is concerned and fearful that one day its members may contract some dread disease...." Plaintiff's Complaint in Class Action, p. 6. SWAMP sues on behalf of its membership and other similarly situated parties who have been exposed to toxic and hazardous substances used by Defendants in their wood preserving operations. In support of its motion for class certification, Plaintiff proposes the following class definition:

> All those persons, other than Defendants, who have either lived and/or worked for a period of time of six (6) months or longer within the last twenty (20) years within that area surrounding, adjacent, contiguous and/or in the vicinity of Defendants' former wood preserving facility located on the south side of Nixon Road in Richmond County, Georgia, bounded: on the north by the south side of Old Savannah Road (excluding the Thermal Ceramics facility and the Goldberg facility) and the south side of the Fort Gordon Highway (excluding that area to the north and east of Hyde Park Aragon Park Subdivisions south of the Fort Gordon Highway and east of the Doug Barnard Parkway, formerly New Savannah Road, all of which is located north of Dan Bowles Road); on the east by the Doug Barnard Parkway (formerly New Savannah Road) from its intersection with Dan Bowles Road to its intersection with Gravel Pit Road and on the east by Gravel Pit Road and includes all past and present residences, businesses or units located on both the east and west side of Gravel Pit Road and further bounded by the west side of Phinizy Swamp and extends southerly to Rocky Creek; on the south by the north side of Rocky Creek and the east side of Georgia Highway 56; and on the west by the east side of Georgia Highway 56 and the south side of Old Savannah Road.

Memorandum in Support of Plaintiff's Motion for Class Certification, p. 2 (October 21, 1994).

### II. Analysis

This Order deals first with the question of whether a dispositive motion may be heard prior to or during class certification hearings—that is, the potential problem of "one-way intervention." The Order then proceeds with a separate consideration of the class certification and summary judgment motions for each of the above-captioned matters.

### A. One–Way Intervention

█ When presented with dispositive motions during or prior to class certification proceedings, federal courts are faced with

the potential problem of "one-way intervention." *See, e.g., American Pipe and Construction Co. v. Utah,* 414 U.S. 538, 546–47, 94 S.Ct. 756, 763–64, 38 L.Ed.2d 713 (1974) (discussing potential danger of deciding dispositive motions prior to certification of class); *Katz v. Carte Blanche Corp.,* 496 F.2d 747, 759 (3d Cir.), *cert. denied,* 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974) (noting that class members should be brought into a suit prior to determination of defendant's liability). "One-way intervention" involves the problem of allowing putative class members to sit on the sidelines while the merits of a class action are decided before the class itself is certified. The result is that putative class members can simply observe the proceedings without assuming any risk that their individual claims may be precluded by an adverse ruling on the merits. Therefore, "[i]n determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin, et al.,* 417 U.S. 156, 178, 94 S.Ct. 2140, 2153, 40 L.Ed.2d 732 (1973) (quoting *Miller v. Mackey International,* 452 F.2d 424, 427 (5th Cir. 1971)). An assessment of a claimant's likelihood of success on the merits generally is an improper basis for ruling upon class certification. *Shores v. Sklar,* 844 F.2d 1485, 1494 (11th Cir.1988).

█ In this case, the Plaintiff has filed a motion for class certification and the Defendants have countered with a motion for summary judgment or, in the alternative, a motion to dismiss the case. At the hearing held on July 19, 1995, counsel for both parties expressly waived any right to have class certification motions heard by this Court first and decided to proceed to consideration of the dispositive motions filed by the Defendants in this case. Counsel for both parties eagerly agreed to argue the dispositive motions before the Court. As a result, there exists no problem of "one-way intervention" in either of these cases.

### B. Requirements for Summary Judgment

Summary judgment should be granted only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The applicable substantive law identifies which facts are material in the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

"The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991). When the *moving* party has the burden of proof at trial, that party must carry its burden at summary judgment by presenting evidence affirmatively showing that, "on all the essential elements of its case ..., no reasonable jury could find for the non-moving party." *United States v. Four Parcels of Real Property,* 941 F.2d 1428, 1438 (11th Cir.1991) (en banc). When the *non-moving* party has the burden of proof at trial, the moving party may carry its burden at summary judgment either by presenting evidence negating an essential element of the non-moving party's claim or by pointing to specific portions of the record which demonstrate that the non-moving party cannot meet its burden of proof at trial, *see Clark,* 929 F.2d at 606–608 (explaining *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) and *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); merely *stating* that the non-moving party cannot meet its burden at trial is *not* sufficient, *Clark,* 929 F.2d at 608. Any evidence presented by the movant must be viewed in the light most favorable to the non-moving party. *Adickes,* 398 U.S. at 157, 90 S.Ct. at 1608.

If—and *only* if—the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark,* 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. *Morris v. Ross,* 663

F.2d 1032, 1033–34 (11th Cir.1981), *cert. denied,* 456 U.S. 1010, 102 S.Ct. 2303, 73 L.Ed.2d 1306 (1982). Rather, the non-moving party must respond by affidavits or as otherwise provided in Fed.R.Civ.P. 56. "[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513. A genuine issue of material fact will be said to exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248, 106 S.Ct. at 2510.

The clerk has given the non-moving party notice of the summary judgment motion, the right to file affidavits or other materials in opposition, and of the consequences of default; thus, the notice requirements of *Griffith v. Wainwright,* 772 F.2d 822 (11th Cir. 1985), are satisfied. The time for filing materials in opposition has expired, and the motion is ripe for consideration. The Court will proceed to review the applicable substantive law and inquire whether the moving party—and, if necessary, the non-moving party—has carried its burden as set forth above. *See Clark,* 929 F.2d at 609 n. 9.

### C. Certifiability of a Class under Fed. R.Civ.P. 23

The requirements for class certification are set forth in Rule 23, Fed.R.Civ.P. Rule 23(a) establishes the prerequisites for a class action, specifically allowing a representative class member to bring an action on behalf of all class members only if

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(a), Fed.R.Civ.P. These four elements are commonly abbreviated as numerosity, commonality, typicality, and adequacy of representation; each element will be addressed in more detail below.

In addition to the four prerequisites just discussed, a class action may not be maintained unless at least one of the subsections of Rule 23(b) is satisfied. The subsection of Rule 23(b) relevant to the present case is 23(b)(3). Rule 23(b)(3) states that

> [a]n action may be maintained as a class action if . . . the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed.R.Civ.P. 23(b)(3). This section also provides several factors pertinent to the findings of whether individual or common issues predominate.

■■■■ Whether class certification lies under Rule 23 is a matter left to the considered discretion of the district court. *Gilchrist v. Bolger,* 89 F.R.D. 402, 404 (S.D.Ga.1981), *vacated in part on other grounds,* 733 F.2d 1551 (11th Cir.1984). The proponent of the class bears the burden of proof on the propriety of class certification. *Jones v. Diamond,* 519 F.2d 1090 (5th Cir.1975).

### D. Summary Judgment in the Present Cases

Summary judgment is proper in *Mamie Newton* because the proposed class definition is defective. Mamie Newton's claims are barred both by the statute of limitations and by the doctrine of res judicata. The proposed class action also lacks the prerequisites of typicality, commonality and adequacy of representation.

The proposed class definition in *SWAMP* is likewise defective. SWAMP lacks standing to litigate the claims of its members. Furthermore, although the membership of SWAMP remains as yet undefined, members who have already settled their claims with the Defendants in previous actions are barred by the doctrine of res judicata. Therefore, summary judgment is appropriate.

Counsel for the Plaintiff opted not to present factual bases for his motion for class certification because his schedule rendered him unprepared to do so at the hearing before this Court on July 19, 1995. At the hearing held on July 19, 1995, counsel for

both parties were urged to make any legal arguments necessary to their positions on class certification, and both parties presented copious briefs stating their positions and legal contentions. Upon consideration of the briefs submitted and argument heard before this Court on July 19, no further argument of the law was necessary. Consequently, I have not considered the factual bases underpinning Plaintiff's motion for class certification in ruling upon this motion. Instead, Plaintiff's motion for class certification in both cases is DENIED because it is impossible to fulfill the legal requirements for certification specified in Fed.R.Civ.P. 23.

### Case # 1: Class Certification in Mamie Newton (194–112)

Plaintiff's motion for class certification is **DENIED** because the proposed class does not meet the requirements of a Rule 23 class action *as a matter of law.* Plaintiff's proposed class will not admit of certification because it is incapable of objective definition and does not fulfill the elements of typicality, commonality and adequacy of representation required under Fed.R.Civ.P. 23(a).

*Class Definition.* Plaintiff filed its motion for class certification on October 21, 1994, and has had ample time to refine the class definition. Plaintiff now seeks certification of a class of people who have been exposed to chemicals released from the Southern Wood Piedmont plant site and who "have specifically evidenced a keratosis." Memorandum in Support of Plaintiff's Motion for Class Certification, p. 2 (October 21, 1994).

■ A proposed class is permissible under Rule 23 so long as it is not too amorphous or incapable of a reasonably precise definition. *See* 7A Charles Wright, Arthur Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2d § 1760, at 120–26 (1986); *see also Rappaport v. Katz,* 62 F.R.D. 512, 513 (S.D.N.Y.1974). To be eligible for certification, a proposed class definition should be stated in objectively definable terms.

■ The class definition provided by Plaintiff is fundamentally defective because it is not based upon any operative facts or specific incident in the case. Instead, the proposed class definition calls for a medical diagnosis of individuals who "have specifically evidenced a keratosis."[2] The type of questions which must be answered in order to determine the members of such a class are of a highly individualized nature. Numerous factors involved in an inquiry of this type call for plaintiff-specific information, such as: (i) the length of time a particular plaintiff resided in the area near the Southern Wood Piedmont plant site; (ii) the duration of exposure to the chemicals released by the plant; (iii) the dosage of chemicals received by each plaintiff; (iv) the method of exposure to the chemicals by each plaintiff; and (v) individual health and medical histories. Because there exists no uniform exposure by all putative class members, all of these elements are incapable of common proof. Designating the members of the class would require an individualized inquiry into the existence of an arsenical keratosis for each putative class member. The definition proposed by counsel is vague and calls for a subjective medical conclusion that provides an improper basis for maintaining a class action. Plaintiff's class definition demonstrates that this proposed lawsuit is ill-suited for adjudication as a class action; therefore, Plaintiff's proposed class definition renders this class uncertifiable as a matter of law.

■ *Typicality & Commonality.* Plaintiff proposed class also fails the Rule 23 requirements of typicality and commonality. The claims of the named representatives need not be identical to the claims of the proposed class members, but rather need only be typical of those claims. *See Eisenberg v. Gagnon,* 766 F.2d 770, 786 (3d Cir.), *cert. denied,* 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985). The inquiry is whether the class representatives themselves present those common issues of law and fact that justify class treatment, thereby tending to insure that the absent class members will be adequately represented. *Id.* If a defendant's course of conduct which forms the basis of a plaintiff's claim relates to the class generally, the plaintiff's claim is considered typical. *General Telephone Co. v. Falcon,*

**2.** Memorandum in Support of Plaintiff's Motion for Class Certification, p. 2 (October 21, 1994).

457 U.S. 147, 158 n. 15, 102 S.Ct. 2364, 2371 n. 15, 72 L.Ed.2d 740 (1982).

However, the class definition offered by Plaintiff employs subjective criteria for class membership that requires individualized medical determinations. No uniform exposure to chemicals exists in this case; instead, each putative class member has allegedly been exposed in a manner that is plaintiff-specific. To become a member of the putative class proposed by Plaintiff, a medical diagnosis of an arsenical keratosis is required. Such a diagnosis, however, is again incapable of common proof. As a result, the proposed class lacks the requisite degree of commonality to render it capable of certification.

The element of typicality also is not met in this case. Mamie Newton's injury and the manner in which it was contracted is not necessarily typical of the manner in which all other members of the proposed class contracted their ailments. Again, inquiries into the medical histories, method of exposure, length of exposure, and exposure dosage for each putative class member would be necessary to determine the class membership in this case. Such individualized inquiries render Plaintiff's proposed class defective as a matter of law under the requirements set forth under Fed.R.Civ.P. 23.

*Adequacy of Representation.* Because Mamie Newton's claims for personal injury are barred both by the statute of limitations and res judicata, she can hardly be said to be an adequate representative for the class.

*1. Statute of Limitations.* In state law tort actions, federal courts must look to the applicable state statute of limitations. *Welch v. Celotex Corp.,* 951 F.2d 1235, 1237 (11th Cir.1992). The relevant statutory period of limitation under Georgia law provides that "[a]ctions for injuries to the person shall be brought within two years after the right of action accrues." O.C.G.A. § 9–3–33.

Georgia courts have held that the right to sue for personal injury accrues only when plaintiffs discover or through the use of reasonable diligence should have discovered the nature of their injury and the causal connection between the injury and the alleged negligent conduct of the defendant. *See King v. Seitzingers, Inc.,* 160 Ga.App. 318, 287 S.E.2d 252 (1981); *Welch,* 951 F.2d at 1236. Georgia courts have not, however, held that the statute of limitations is tolled until a medical diagnosis has actually been made. *See Welch,* 951 F.2d at 1237; *Thomason v. Gold Kist, Inc.,* 200 Ga.App. 246, 407 S.E.2d 472 (1991).

The applicable Georgia statute of limitations bars Mamie Newton's claims for personal injury. In *Newton v. Southern Wood Piedmont,* Civil Action No. CV 189–167, Mamie Newton enumerated several medical problems, including gallstones, vision impairment, blackout spells, skin rashes and sores, tooth and hair loss, and heart trouble, which she attributed to exposure to chemicals emanating from the Southern Wood Piedmont plant site. Plaintiff Mamie Newton's Answers to Defendant Southern Wood Piedmont Company's First Interrogatories, Civil Action No. 189–167, November 8, 1989, p. 3–4. Thus, at least as early as November of 1989, Mamie Newton suspected a causal connection between her injuries and the alleged wrongful conduct of the Defendants in this case. Although Mamie Newton cannot specify when her arsenical keratosis appeared, she possessed sufficient information during the pendency of both the first *Newton* case (Civil Action No. CV 189–167) as well as the *Marshall* case (Civil Action No. CV 187–121) to have notice of the claim for personal injury asserted in the instant case. There is no requirement under Georgia law that a plaintiff have a medical diagnosis of his or her condition before the statute of limitations begins to run. Therefore, any claim by Mamie Newton for her arsenical keratosis is one which should have been brought in one of the earlier lawsuits. I find and conclude that Mamie Newton's claims for personal injury in this case are well in excess of two years old and therefore barred by the Georgia statute of limitations for personal injury actions.

*2. Res Judicata.* Parties are precluded from relitigating matters that were litigated or could have been litigated in a

prior action by the doctrine of res judicata. *Pelletier v. Zweifel,* 921 F.2d 1465, 1501 (11th Cir.), *cert. denied,* 502 U.S. 855, 112 S.Ct. 167, 116 L.Ed.2d 131 (1991); *see also I.A. Durbin, Inc. v. Jefferson Nat'l Bank,* 793 F.2d 1541, 1549 (11th Cir.1986).

■ Mamie Newton's claims for personal injury are barred by the doctrine of res judicata. It is undisputed that Plaintiff and proposed class representative Mamie Newton was a party to prior settlement agreements and previously litigated similar claims before this Court. These agreements demand the full respect and recognition of this Court and the parties bound thereunder. The settlement agreement language in *Marshall* terminating "any and all claims that are or could have been asserted" embodies a sweeping and encompassing release. Such language clearly and unequivocally settles the claims of Mamie Newton and any other claimants who were parties to the agreements. Defendants are entitled to the sense of peace and finality they sought by entering into the settlement agreements. Accordingly, the prior settlement agreements render Mamie Newton's claim non-actionable. Defendants' motion for summary judgment on the question of class certification is **GRANTED.** Defendants' motion for summary judgment on the claims of Mamie Newton is also **GRANTED.**

### Case # 2: Class Certification in SWAMP (193–150)

Plaintiff's motion for class certification is **DENIED** because the proposed class does not meet the requirements of a Rule 23 class action *as a matter of law.* Plaintiff's proposed class will not admit of certification because it is incapable of objective definition and does not fulfill the elements of typicality, commonality and adequacy of representation required under Fed.R.Civ.P. 23(a).

■ *Class Definition.* Plaintiff filed its motion for class certification on October 21, 1994 and has had ample time to refine the class definition. Plaintiff has been unable in a year to propose another class definition.

Plaintiff now seeks certification for medical monitoring a class of people who have allegedly been exposed to chemicals released from the Southern Wood Piedmont plant site and who are fearful of the potential adverse health effects. This proposed class definition is incapable of certification as a matter of law under Fed.R.Civ.P. 23.

### Adequacy of Representation.

■ The proposed definition is defective because SWAMP has no standing to bring suit against the Defendants in this case. Furthermore, the doctrine of res judicata renders this proposed class incapable of certification because the claims represented in this lawsuit have already been settled in prior actions.

■ *1. Standing of an Unincorporated Association.*[3] Where an organization itself suffers injury, it may join with a class of representatives to vindicate its claim. *Smith v. Board of Education of Morrilton School District No. 32,* 365 F.2d 770 (8th Cir.1966). In the absence of injury to the association itself, however, the United States Supreme Court has determined that an association must meet three requirements before it may bring suit on behalf of its membership:

> (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt v. Washington Apple Advertising Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1976); *see also Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343 (1975). Furthermore, whether an association has standing to sue on behalf of its members also depends upon the form of relief sought. *Warth,* 422 U.S. at 515, 95 S.Ct. at 2213. Where the association seeks an injunction, declaration or some other form of prospective relief, an association is more likely to possess standing to sue on behalf of its members. *Id.*

---

**3.** Georgia law does allow an action to be maintained by an unincorporated association. *See*

O.C.G.A. § 9–2–24.

■ In the present case, SWAMP lacks standing as a class representative to litigate the claims of its membership. SWAMP fails under parts (a) and (c) of the test outlined by the Supreme Court in *Warth*. Under part (a), it is unclear whether the class membership includes individuals who have already litigated their claims in one of several prior lawsuits against the Defendants. To the extent that SWAMP includes such individuals in its membership, the individuals would not have standing to sue in their own right because their claims would be precluded by res judicata. Consequently, because such individuals lack standing, they have no standing to confer upon SWAMP as a representative of their claims.

SWAMP also lacks standing under part (c) of the test set forth in *Warth*. The relief[4] requested by the Plaintiff in this case would require the participation of individual members. Diagnosis and screening associated with a medical monitoring claim necessitates that the members of SWAMP offer individualized proof of their injuries. Because individual members would be required to participate in the lawsuit, SWAMP is an inadequate representative and class action is an unsuitable vehicle for the adjudication of this claim.

### 2. Res Judicata

■ During oral argument before the Court on July 19, counsel for the Plaintiff provided no documentation of the membership of SWAMP. While counsel was unable to provide a list of members of the unincorporated association, oral argument provided every indication that SWAMP's membership includes individuals who have already had their claims settled by the agreements incorporated into the previous judgments ap-

proved by this Court. Consequently, to the extent that these individuals are members of SWAMP, their claims are barred by res judicata and SWAMP will not be permitted to sue on their behalf. The Defendants in this suit clearly and unequivocally settled any and all claims such plaintiffs could have brought in the settlement documents, and those settlement terms deserve the respect of the parties bound by them. Therefore, Defendants' motion for summary judgment as to these plaintiffs is hereby **GRANTED**; likewise, summary judgment on the motion for class certification is **GRANTED** in favor of the Defendants.

### III. Conclusion

For the foregoing reasons and as specifically set forth, in *Mamie Newton, et al. v. Southern Wood Piedmont, et al.* (CV194–112), the Defendants' Motion for Summary Judgment is **GRANTED** on the claims of Mamie Newton; Plaintiff's Motion for Class Certification is **DENIED**. In *SWAMP v. ITT Corporation, et al.* (CV193–150), the Defendants' Motion for Summary Judgment is **GRANTED**; Plaintiff's Motion for Class Certification is **DENIED**. The Clerk of the Court is directed to enter judgment in favor of the Defendants in each case and to tax costs against the Plaintiffs. Thereafter, the Clerk shall close these cases.

**ORDER ENTERED.**

---

4. Plaintiff proposes "the creation of a fund to be administered on a long term future basis for the purpose of diagnosing various illnesses associat-ed with the presence of Defendants' wood preserving chemicals and solvents." Plaintiff's Letter Brief, filed August 2, 1995.