Erma GEVEDON, et al., Plaintiffs,

v.

PURDUE PHARMA, et al., Defendants.

No. 02–CV–8–DCR.

United States District Court,
E.D. Kentucky,
Pikeville Division.

Oct. 17, 2002.

---

H. Michael Lucas, Pikeville, KY, for plaintiffs.

John M. Famularo, III, Daniel E. Danford, Stites & Harbison, Keith Moorman, Susan J. Mohler, Frost Brown Todd LLC, Lexington, KY, for defendants.

## MEMORANDUM OPINION AND ORDER

REEVES, District Judge.

This matter is before the Court for consideration of the Purdue Defendants' Motion to Deny Class Certification. This Motion will be granted because the Plaintiffs have not shown a factual basis to support certification of a class under Rule 23 of the Federal Rules of Civil Procedure.

### I. PROCEDURAL BACKGROUND [1]

On May 2, 2002, the Purdue Defendants [2] filed the instant motion asking the Court to deny the class action proposed by the Plaintiffs. [Record No. 23] The Plaintiffs responded on May 23, 2002, and asked for 180 days to conduct limited discovery on the issue of class certification. [Record No. 26] The Defendants filed their reply on May 30, 2002. [Record No. 27]

After reviewing the parties' positions, and out of an abundance of caution, the Court gave the Plaintiffs 90 days to conduct limited

---

1. The facts underlying this action are set forth in the Court's March 26, 2002, Order [Record No. 18].

2. The Purdue Defendants referred to collectively herein are: Purdue Pharma, L.P., Purdue Pharma, Inc., The Purdue Frederick Company, Purdue Pharmaceuticals L.P., the P.F. Laboratories, Inc., and PRA Holdings, Inc.

discovery on the maintainability of the alleged class action. The Court also gave the Plaintiffs 20 days to file an additional response following this discovery period. [Record No. 28]

The 90 day discovery period ended on September 5, 2002. However, the Plaintiffs did not file an additional response within the time allotted, nor have they filed any other pleading addressing the merits of the instant motion. Because the Plaintiffs have not filed any pleading presenting any factual or legal arguments in opposition to the instant motion, the Court must rely heavily on the allegations set forth in their First Amended Complaint.

## II. *LEGAL ANALYSIS*

### A. *The Standard for Determining the Maintainability of a Class Action*

Rule 23 of the Federal Rules of Civil Procedure[3] sets forth the requirements for maintaining a class action. Under this rule, a party seeking to certify a class bears the burden of establishing that certification is proper. *In re American Medical Sys., Inc.,* 75 F.3d 1069, 1079 (6th Cir.1996). A class action may not be approved simply "by virtue of its designation as such in the pleadings." *Id.* at 1079. Nor may prospective class representatives simply rely upon "mere repetition of the language of Rule 23(a)" to support their motion. *Id.* Instead, an adequate basis for *each* prerequisite must be pled and supported by the facts. *Weathers v. Peters Realty Corp.,* 499 F.2d 1197, 1200 (6th Cir.1974) (citation omitted). Additionally, the court must engage in a "rigorous analysis" to determine whether the prerequisites of Rule 23 are satisfied. *American Medical Sys.,* at 1078–79, *citing General Tel. Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). The Court, however, should not attempt to resolve or assess the merits of the action in determining whether a class should be certified. *Weathers,* at 1201.

### 1. *Rule 23 Analysis*

#### a. *Two Inherent Prerequisites: Existence of a "Class" and Membership in the "Class."*

Although Rule 23 does not explicitly set forth this requirement, one necessary element is that "there must be a 'class.'" Wright and Miller, § 1760. This determination depends on the circumstances of each case. If the Court is satisfied that a class exists, it must then examine whether the proposed representatives are members of the class they seek to represent. *Id.* at § 1761.

##### i. *Is there a "Class?"*

In *Sprague v. General Motors Corp.,* 133 F.3d 388, 397 (6th Cir.1998), *cert. denied,* 524 U.S. 923, 118 S.Ct. 2312, 141 L.Ed.2d 170 (1998), the court indicated that no class that fails to satisfy all four of the prerequisites of Rule 23(a) may be certified and that each class meeting those prerequisites must also pass at least one of the tests set forth in Rule 23(b). *Stout v. J.D. Byrider,* 228 F.3d 709, 717 (6th Cir.2000), *cert. denied,* 531 U.S. 1148, 121 S.Ct. 1088, 148 L.Ed.2d 963 (2001). Other Circuits have held that other inherent elements must be shown in addition to the four explicit requirements. *See Chaffee v. Johnson,* 229 F.Supp. 445, 448 (S.D.Miss. 1964), *aff'd,* 352 F.2d 514 (5th Cir.1965), *cert. den.* 384 U.S. 956, 86 S.Ct. 1582, 16 L.Ed.2d 553 (1966) ("The members of a class must be capable of definite identification as being either in or out of it."); *Roman v. ESB, Inc.,* 550 F.2d 1343, 1348 (4th Cir.1976) (In order to determine whether a class action is proper, the district court must determine whether a class exists and, if so, what it includes. Although not specifically mentioned in the rule, the definition of the class is an essential prerequisite to maintaining a class action).

When examining whether a class exists, if "[t]he vague and indefinite description of the purported class depends upon the state of mind of a particular individual, rendering it difficult, if not impossible, to determine whether any given individual is within or

---

**3.** The Plaintiff brought this alleged class action pursuant to Rule 23 of the Kentucky Rules of Civil Procedure. Rule 23 of the Federal Rules of Civil Procedure is virtually identical to Rule 23 of the Kentucky civil rules and will be used to examine the instant class action allegations. F.R.C.P. 23(a); Ky.R.Civ.P. 23.02.

without the alleged class," certification is not appropriate. *Chaffee,* 229 F.Supp. at 448; *Simer v. Rios,* 661 F.2d 655 (7th Cir.1981). In *Koen v. Long,* 302 F.Supp. 1383 (E.D.Mo. 1969), plaintiffs brought suit against certain public officers for intimidation and harassment and alleged that those officers engaged in a "scheme, plan or conspiracy" to deprive the proposed class of certain civil rights. *Id.* at 1386. The court held that "where membership in the class is dependent upon both the state of mind of the individual involved and upon the state of mind of the particular defendant involved" the class may not be maintained. *Id.* at 1388.

Likewise, in *Newton v. Southern Wood Piedmont Co.,* 163 F.R.D. 625 (S.D.Ga.1995), *aff'd,* 95 F.3d 59 (11th Cir.1996), plaintiffs sought to have a class certified based on medical problems resulting from alleged chemical exposure. In order to ascertain the identity of the putative class, a medical diagnosis of each individual in the proposed class was required. Certifying the class would require an individualized inquiry into the existence of the medical condition of each member of the class.

The court recognized that the types of questions which must be answered in order to ascertain this type of class were highly individualized in nature and called for "plaintiff-specific information." *Id.* Noting that the areas of investigation would include the duration of exposure, dosage of the chemical each plaintiff received, method of exposure to the chemical and individual health and medical histories, the Court held that the class definition called for "subjective medical conclusion[s]" and was vague. *Id.* The court found that this was an improper basis for certifying a class action and that the class was "fundamentally defective because it is not based upon any operative facts or specific incident in the case." *Id.*

Similarly, in *American Medical Sys.,* 75 F.3d 1069, a case also involving similar mass-tort, medical product liability issues, the Sixth Circuit addressed the issue of individual, plaintiff-specific information. The court overturned the district court's class certification because "each plaintiff [had] a unique complaint, and each [received] different in-formation and assurances from his treating physician." *Id.* at 1085. The court found that a class action could not be maintained under the facts presented.

Here, the Plaintiffs seek to certify a class which includes "[a]ll persons in the Commonwealth of Kentucky who have obtained Oxy-Contin and/or who obtain OxyCOntin in the future." [Record No. 1, First Amended Complaint, ¶ 8] The Purdue Defendants contend that this definition is facially broader than the proposed class that was rejected by this Court in *Foister v. Purdue Pharma, et al.,* Case No. 01–268–DCR, 2002 WL 1008608 (E.D.Ky. Feb 26, 2002) (London Div.), but that the proposed classes in both cases are virtually identical. [Record No. 23, Memorandum, p. iii] In *Foister,* the Plaintiffs sought to include all person "harmed" due to the addictive nature of OxyContin. Like *Foister,* the Plaintiffs in this case allege that "[i]ndividuals within this Class have been and are presently being exposed to the risk of severe disabling addiction; actual addiction; the consequences of addiction; the reasonable fear of addiction and /or the consequences of addiction; and other adverse conditions, including physical, mental, and/or emotional harm, death, and loss of consortium" [First Amended Complaint, ¶ 9]

After examining the limited number of references to the proposed class definition in the complaint, the Court finds that this proposed "class" is similar in kind to that sought to be certified in *Koen,* 302 F.Supp. 1383, *Newton,* 163 F.R.D. 625, and *American Medical Sys.,* 75 F.3d 1069. The Plaintiffs seek to certify a class based on medical problems, addiction, and damages resulting to those who "obtain" OxyContin® and suffer addiction and other adverse conditions. In order determine the Defendant's liability under these allegations, the Court or jury would be faced with a number of questions that are highly individualized in nature and call for plaintiff-specific information. Such an inquiry would include where the putative class member obtained the drug, whether possession of the drug was legal, and whether each member was, in fact, injured as a result of obtaining the drug. Further inquiries would include the assurances each Plaintiff received

from his treating physician, individual medical histories, dosage and length of prescriptions and method of taking the drug. Basically, this Court would need to determine, consider and resolve a number of highly subjective facts, many of which are dependent on the state of mind of particular individuals, in order to ascertain whether any given individual is within or outside the alleged class.

As a result, the Court concludes that this definition is vague and calls for subjective medical conclusions. The present case is unsuitable for certification because *each* putative class member's state of mind requires litigating *each* individual case. Even limiting the class to those individuals who legally obtained the drug does not remedy the large number of individual issues that still remain. The proposed class is so highly diverse and so difficult to ascertain that it is not adequately defined. Thus, this Court concludes that an initial, inherent element of class certification fails for lack of a definable, identifiable class.

### ii. *Are the Plaintiffs Members of the Proposed "Class?"*

■■■ The Plaintiffs must also be members of the proposed "class." This element stems from the real party in interest requirement of Rule 17(a) of the Federal Rules of Civil Procedure and is closely related to subsection (a)(4) of Rule 23, requiring that the representatives adequately protect the interest of the proposed class members. F.R.C.P. 17(a); F.R.C.P. 23(a)(4); Wright and Miller, § 1760. Here, the Plaintiffs assert that they are "proposed representatives on behalf of a Class seeking injunctive relief and damages." [First Amended Complaint, ¶ 61] The First Amended Complaint also alleges that both of the named Plaintiffs have taken and continue to take OxyContin. [First Amended Complaint, ¶¶ 11–12] However, the named Plaintiffs do not appear to have suffered "severe disabling addiction; actual addiction; the consequences of addiction; the reasonable fear of addiction and /or the consequences of addiction; and other adverse conditions, including physical, mental, and/or emotional harm, death, and loss of consortium." [First Amended Complaint, ¶ 9] Thus, even if the

allegations in the complaint would support the existence of a well-defined "class," there is not enough evidence or information for the Court to conclude that the named Plaintiffs would fall within the proposed "class."

While it appears that the proposed class already suffers from two fatal flaws, the Court will, out of an abundance of caution, examine application of Rule 23(a) of the Federal Rules of Civil Procedure to determine if there is any merit to the Plaintiffs' class allegations.

### b. *Rule 23(a)—Four Prerequisites of a Class Action*

Rule 23(a) governs the prerequisites for certifying a class action. Specifically, it provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

F.R.C.P.23(a). Each of these elements will be examined in turn.

### i. *Rule 23(a)(1)—Is Joinder Impracticable?*

■■■ Subsection (a)(1) of the rule is often referred to as the numerosity requirement. Wright & Miller, § 1762. Analysis of this requirement turns on whether joinder of all alleged class members would be impracticable. "Impracticability" depends upon all the circumstances of the case. *Cash v. Swifton Land Corp.*, 434 F.2d 569, 571 (6th Cir.1970). No specific minimum number of alleged class members is necessary. Instead, the appropriate inquiry is whether Plaintiffs have sufficiently demonstrated the existence of the numbers of persons they purport to represent. *Young v. Trailwood Lakes, Inc.*, 61 F.R.D. 666 (W.D.Ky.1974); *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir.1989). In making this determination the Court may consider "reasonable inferences drawn from

facts before it." *Senter v. General Motors Corp.*, 532 F.2d 511, 523 (6th Cir.1976), *cert. denied,* 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976). However, the Court cannot rely on speculation or conclusory allegations of the proposed representatives. They must "show some evidence of or reasonably estimate the number of class members." *Schwartz v. Upper Deck,* 183 F.R.D. 672 (S.D.Ca.1999); *Sims v. Parke Davis & Co.*, 334 F.Supp. 774, 781 (E.D.Mich.1971) ("Speculation cannot be used to establish that a prospective class is so numerous as to make joinder impracticable.").

In *Sims, Id.,* the plaintiffs' estimate was not supported by any evidence. Rather, the only information given to the court regarding size was a comment that the class "would probably contain between 70 and 200 persons." *Id.* at 781. Thus, the Court refused to certify the proposed class because the plaintiffs failed to allege the approximate size of the class. Here, the Plaintiffs' allegations are of little use in determining the number of potential class members. While they provide information regarding total annual sales of OxyContin® for 2000, sales volume alone will not justify a finding of numerosity. *Schwartz,* 183 F.R.D. at 681. Plaintiffs also allege that "there are thousands of persons in the Class." [First Amended Complaint, ¶ 68] They attempt to support this claim by stating that "[a]lthough the Plaintiffs do not presently know the names of all Class Members, their identities and addresses can be readily ascertained." [First Amended Complaint, ¶ 69] However, because the issue here concerns the number of people who allegedly have obtained OxyContin® and have been injured by the allegedly improper actions or inactions of the Defendants, unsupported allegations like the ones presented in the First Amended Complaint are insufficient.

Although this Court may make reasonable judgments from the facts before it, the allegations presented in the First Amended Complaint do not establish "that the class is so numerous that joinder of all members is impracticable." F.R.C.P 23(a)(1). Instead, those allegations amount only to a simple averment of numerosity and come close to merely repeating the language of the rule.

Like the allegations in *Sims,* the pleadings and evidence before this Court fail to allege the approximate class size, and Plaintiffs fail to demonstrate that the class is so numerous that joinder of all members is impracticable.

> ii. *Rule 23(a)(2)—Are there Questions of Law or Fact Common to the Class?*

While the Court will address subsection (a)(2), and discuss the relevant allegations made herein, the Court will not draw any conclusions. Common questions of law or fact regarding the proposed class must be present before certification is proper. F.R.C.P. 23(a)(2). While many courts have simply concluded that common questions exist without indicating the reasons for their determination, the Sixth Circuit has held this requirement "is qualitative rather than quantitative, that is, there need only be a single issue common to all members of the class." *American Medical Sys.,* 75 F.3d at 1080; 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions,* § 3.10, at 3–50 (3d ed.1992). However, the existence of any common question is insufficient because "at a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality. What we are looking for is a common issue the resolution of which will advance the litigation." *Sprague,* 133 F.3d at 397.

In *American Medical Sys.,* the plaintiffs alleged "[t]he circumstances of this case establish that the common liability questions are appropriate for a trial in the class setting. The primary focus of the litigation will be Defendant's conduct when it researched, designed, marketed, manufactured and sold the [medical product in question]." *American Medical Sys.,* at 1080, n. 11. In that case, the plaintiffs averred eighteen specific questions in the Amended Complaint, yet that Court found that the questions of fact and of law proposed by the plaintiffs were not necessarily of the *quality* required to satisfy commonality. *Id.* at 1080, n. 10. Specifically, it found that

> proofs as to strict liability, negligence, failure to warn, breach of express and implied warranties will also very from plaintiff to

plaintiff because complications with [the device] may be due to a variety of factors, including surgical error, improper use of the device, anatomical incompatibility, infection, device malfunction, or psychological problems. Further, each plaintiff's [physician] would be required to testify to determine what oral and written statements were made to the physician, and what he in turn told the patient, as well as to issues of reliance, causation and damages.

*Id.* at 1081. The Court held that, "[i]n the absence of more specific allegations and/or proof of commonality of any factual or legal claims," certification was not proper. *Id.*

Here, the causes of action alleged in the First Amended Complaint are similar to those advanced in *American Medical Sys.* In fact, they are of the same *type* alleged by plaintiffs in *American Medical Sys.*, as they assert causes of action for strict liability, negligence, failure to warn and breach of warranty. The Plaintiffs allege that "[t]here are numerous and substantial questions of law and fact common to all of the Members of the Class that control this litigation and that predominate over any individual issues." [First Amended Complaint, ¶ 70]. The questions raised by the Plaintiffs include:

whether OxyContin was promoted, marketed, sold, and distributed by Defendants in a misleading manner; whether the Defendants knew or should have known of the harmful effects of their promotion, marketing, sale, and distribution of OxyContin; whether Defendants are liable for manufacturing a defective product; whether Defendants are liable for failure to properly warn consumers about OxyContin and its use; whether Defendants acted negligently in the promotion, marketing, sale and distribution of OxyContin; whether Defendants continued to promote, market, sell, and distribute OxyContin notwithstanding its [sic] knowledge of OxyContin's harmful effects, its potential for abuse, and the misrepresentations of the Defendants; [and] whether Defendants knowingly omitted, suppressed, or concealed material facts about the unsafe and harmful nature

of OxyContin from the medical community and/or the public.

[First Amended Complaint, ¶ 72]

Contrary to the Plaintiffs' assertions, there are additional questions the answers to which will vary from member to member. Like those in *Am. Med. Sys.*, any harm allegedly suffered by each class member may be due to a number of individual factors such as dosage, use and manner of administration of the drug, individual and family medical and psychological histories, level of personal awareness regarding the purported risks and medical reasons for use. Furthermore, each Plaintiff will be required to testify to issues of reliance, causation and damages. While there may be some common questions regarding the Defendants' alleged actions or inactions, because other elements for a class action are not met, the Court does not find it necessary to resolve this issue at this time.

### iii. *Rule 23(a)(3)—Are the Claims of the Named Representatives Typical of the Class?*

■ Subsection (a)(3) of the rule requires that the claims of the representatives must be typical of the claims of the class. Rule 23(a)(3); Wright & Miller, § 1764. In conducting this analysis, the Court must determine "whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." Newberg and Conte, § 3.13, at 3–75, 76. "The premise may be simply stated: as goes the claims of the named plaintiff, so go the claims of the class." *Sprague*, 133 F.3d at 399. The representatives' interests must be aligned with those of the putative class and the pursuit of their claims must also advance the interest of the class. *American Medical Sys.*, 75 F.3d at 1082. The representatives' claims need not always involve the same facts or law, provided there is a common element of fact or law. *Senter*, 532 F.2d at 525. However, limitations do exist, "particularly when the claimed injury is tied to a complex course of conduct engaged in by the defendants over a long period of time, as opposed to a single act to which all class members have been

exposed equally." *Clay v. American Tobacco Co.*, 188 F.R.D. 483, 492 (S.D.Ill.1999), *quoting Insolia v. Philip Morris Inc.*, 186 F.R.D. 535, 543–44 (W.D.Wis.1998).

In *Stout*, 228 F.3d 709, the Sixth Circuit examined the typicality element involving numerous claims of fraudulent conduct against a used car dealership. The plaintiffs relied on their understanding of the purchase and of the transaction terms. However, because not all buyers purchased cars under the same agreement, the Court identified discrepancies between the plaintiffs and the putative members. The discrepancies included:

> the type of car, the degree of repairs necessitated, the response to those repairs, the purpose for which the car was purchased, the individual circumstances and transactions surrounding each purchase including each class member's understanding of the terms and condition of their purchase agreements, and the extent of the injury suffered.

*Id.* at 717. As a result of the complex course of conduct engaged in by the defendants over a long period of time, the court upheld the District Court's determination that the Plaintiffs' claims were not typical of class.

Similarly, in *American Medical Sys.*, 75 F.3d 1069, the Sixth Circuit noted that the plaintiffs' claims in the underlying action were atypical. In reaching its decision, the Court noted that each Plaintiff used a different model of the medical device in question and each experienced a distinct problem. As a result, it appeared that the defendants engaged in a complex course of conduct over a long period of time as well.

In this case, the Plaintiffs allege that the claims involved "are typical of the claims of the Class, having been injured by the same transactions, practices, and tortuous conduct of the Defendants." [First Amended Complaint, ¶ 75] They contend that the Defendants have subjected the putative members "to the same course of conduct." [First Amended Complaint, ¶ 76] Furthermore, they aver that they have no adverse interest

with the class members. [First Amended Complaint, ¶ 77] However, the Purdue Defendants argue that the Plaintiffs are trying to shift the focus onto the Defendants' conduct rather than on the facts particular to individual damages. [Record No. 23, Memorandum, p. 30] They argue that the analysis is more complicated than the Plaintiffs suggest where, as here, a complex course of conduct is alleged. [Record No. 23, Memorandum, p. 31]

Admittedly, the question of whether the named Plaintiffs' claims are typical of those of the putative members is a difficult one. While this Court held in *Foister* that individual issues[4] prevented the claims from being typical, the Court cannot rely on the limited number of allegations *alone* to make the determination. Yet, there does appear to be a deciding factor—the remaining question of the conditions by which and the factors that led to each putative member obtaining Oxy-Contin®. The resolution of this question will require an examination of facts specific to each class member. Furthermore, the Plaintiffs' allegations seem to imply that the Defendants engaged in a complex course of conduct over a long period of time. Thus, because of all of these factors, the Court finds that the claims of the Plaintiffs are not typical of those of the putative members.

> iv. *Rule 23(a)(4)—Will the Named Plaintiffs Fairly and Adequately Protect the Interests of the Class?*

■ Subsection (a)(4) of Rule 23 permits a class to maintained only if "the representative parties will fairly and adequately protect the interests of the class." The Sixth Circuit has adopted a two-part analysis for this requirement. *Senter*, 532 F.2d at 524–25, *following Gonzales v. Cassidy*, 474 F.2d 67 (5th Cir.1973). This test requires that the representatives: (1) have common interests with unnamed members of the class and (2) will vigorously prosecute the interests of the class though qualified counsel. *Senter*, at 524–35; *see also Cross v. National Trust*

---

**4.** Such individual issues include: the dosage of the drug prescribed, the duration of taking the drug, the response each individual experienced from the drug, the purpose for which the drug was prescribed, the individual circumstances and transactions surrounding each prescription, such as each class member's understanding of the drug's effects and the extent of the harm caused.

*Life Ins. Co.*, 553 F.2d 1026 (6th Cir.1977) (The rule tests "whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent" and "the experience of the counsel for the plaintiffs.") Additionally, the second element requires that attorneys for the class must be qualified to conduct the proposed litigation. *American Medical Sys.*, at 1083. These determinations are questions of fact that depend on the circumstances of each case. Further, the party seeking certification has the burden of proof on these issues. *See* Wright and Miller, § 1765.

While the Court would normally engage in a thorough and exhaustive analysis of this element, the Plaintiffs included only two allegations in their First Amended Complaint that address this adequacy element. First, they allege that "[they] will fairly and adequately represent and protect the interests of the Class Members because Plaintiffs have no interest adverse to the interests of the Class." [First Amended Complaint, ¶ 78] Further, the complaint avers that "Plaintiffs have retained counsel experiences and competent in the prosecution of class actions and complex litigation." [First Amended Complaint, ¶ 79] No other factual allegations support this element. Instead, these allegations merely parrot the language of Rule 23(a)(4). Considering that the Plaintiffs have not provided factual or other supporting allegations concerning this element, this Court cannot conclude that they have adequately demonstrated that they will protect the interests of the class or that their counsel is qualified.

### III. *CONCLUSION*

The Plaintiffs have failed to meet their burden of establishing the inherent elements and the subsection (a) prerequisites of a class action under Rule 23. Given this failure, this Court does not need to engage in an analysis under Rule 23(b). For the reasons discussed herein, it is hereby ORDERED that the Defendants' Motion to Deny Class Certification [Record No. 23] is GRANTED. Certification of a class action is DENIED.