Marty SCHWARTZ, et al., On Behalf of Themselves and All Others Similarly Situated, Plaintiffs,

v.

The UPPER DECK COMPANY, Defendant.

Civ. No. 96 CV–3408–B (AJB).

United States District Court, S.D. California.

Jan. 12, 1999.

William S. Lerach, Alan M. Mansfield, James Swiderski, Milberg, Weiss Bershard Hynes & Lerach, San Diego, CA, Melvyn I. Weiss, Michael C. Spencer, Milberg, Weiss Bershard, Hynes & Lerach, New York City, Kevin Reddy, Milberg, Weiss Bershard, Hynes & Lerach, Los Angeles, CA, Henry H. Rossbacher, Rossbacher & Associates, Los Angeles, CA, Neil J. Moritt, Alan S. Hock, Moritt, Hock & Hamroff, Garden City, NJ, for plaintiff.

Kent B. Goss, Ian R. Barrett, Valerie Goo, Christopher Lipp, Pillsbury Madison & Sutro LLP, Los Angeles, CA, for defendant.

## ORDER DENYING MOTION FOR CLASS CERTIFICATION

BREWSTER, Senior District Judge.

### I. Introduction

This case asks whether the practice of inserting a "chase" or "insert" card into packages of sports cards constitutes an illegal lottery or gambling. This Court has held that "as long as plaintiffs allege that they purchased packages of Upper Deck trading cards at least partially for the chance of winning a valuable chase card, then they have sufficiently alleged 'racketeering activity' for purposes of RICO." *Schwartz v. Upper Deck (I)*, 956 F.Supp. 1552, 1558 (S.D.Cal.1997). Plaintiffs move to certify this case as a class action.

### II. Class Certification Analysis

#### A. Standard of Law

Fed.R.Civ.P. 23(a) provides four independently required criteria which must be met in order for a class to be certified:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

A proposed class action must also satisfy *one* of the subdivisions of Rule 23(b). Rule 23(b)(3) requires that:

the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

■ A court need not reach the merits of the action in determining whether a class action is appropriate. *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 179, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). However, a court may consider evidence even if that evidence also relates to the merits. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992). A court should accept the substantive allegations of the complaint as true. *Blackie v. Barrack*, 524 F.2d 891, 901 n. 17 (9th Cir.1975). Plaintiffs carry the burden of demonstrating satisfaction of the prerequisites to class certification. *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir.1985). Failure to prove any one of Rule 23's requirements destroys the alleged class action. *Rutledge v. Electric Hose & Rubber Co.*, 511 F.2d 668, 673 (9th Cir.1975). Courts must rigorously assess whether the four prerequisites have been met. *General Tel. Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Conditional certification of an improper class on a speculative possibility that it may later meet the requirements is improper. *Blackie*, 524 F.2d at 901. A class certification determination is committed to the discretion of the district court. *Price v. Lucky Stores, Inc.*, 501 F.2d 1177, 1179 (9th Cir.1974).

## B. Class Certification Prerequisites

### 1. Rule 23(b)(3)

■■■ Plaintiffs cannot meet the requirements of Rule 23(b)(3).[1] Rule 23(b)(3) states:

An action may be maintained as a class action if ... the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of the class action. Fed.R.Civ.P. Rule 23(b)(3).

These factors are not exhaustive. *Wilcox Dev. Co. v. First Interstate Bank of Oregon,* 97 F.R.D. 440, 444 (D.Or.1983).

■■■ The Court must decide three issues under Rule 23(b)(3): (1) whether facts common to the class, i.e. the purchase of Upper Deck's sports cards "for the chance of winning a valuable chase card," predominate over individual determinations of that question, *see Schwartz (I),* 956 F.Supp. at 1558; (2) whether the Court need apply different state laws and, if so, whether determination of the applicability of separate state law pro-

visions to each class member will predominate over common questions of law, and (3) whether a class action is a superior vehicle for consideration of Plaintiffs' claims.

#### a. *Factual Determinations*

The potential class is restricted to those who bought Defendant's product for the purpose of finding a chase card. "Plaintiffs must allege that defendant's illegal lottery (i.e. the chance of winning a prize) was the reason they paid money to defendants." *Schwartz (I),* 956 F.Supp. at 1559. Without such intent, consideration paid equals that received.

Individual purchase may be based on a variety of reasons. *See* Opp'n, p. 3, n. 1; *see also* "Exhibit A" of Randall Decl.[2] Defendant asserts that "every phase from proof of membership in the class, to liability, and through to damages will be replete with individualized determinations, necessitating mini-trials on each separate issue." *See* Opp'n, p. 6-7. Defendant argues that proof will be required to show that each individual purchased Upper Deck cards, within the class period, and that the individual was motivated to do so at least in part to obtain the "chase" or "insert" card. Defendant claims that this determinative process will "consume an inordinate portion of this Court's resources and time," citing *In re Hotel Telephone Charges,* 500 F.2d 86, 88-89 (9th Cir.1974) (denying class certification where individualized issues would take over one hundred years to resolve).[3] Defendant also argues that any damages will be highly individualized. Defendant lists eleven separate elements an individual class member would have to show

---

1. At oral argument, Plaintiffs raised for the first time an issue as to whether Plaintiffs met the standard of Rule 23(b)(2) ("... the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole"). Plaintiffs' First Amended Complaint does request a declaratory judgment and injunctive relief. However, the Defendant's conduct is not per se illegal. Moreover, individual damages can be satisfied by monetary recompense, making issuance of an injunction unlikely. As such, the Court finds that this Motion is governed by Rule 23(b)(3).

2. At oral argument, and in their Reply brief, p. 1, n. 2, Plaintiffs stressed that a large number of responses, from every age group, stated that they purchased sports cards as an "investment." The Court does not equate purchase for "investment" with purchase for chance of finding an insert card. Packages of cards sold without chase cards may acquire value over time and thus act as an investment, irrespective of chase cards.

3. According to Defendant, if the Court spent only two minutes for a class of 250,000 individuals, "it would take four years, working constantly at a rate 40 hours per week, just to finish this initial line of inquiry." *See* Opp'n, p. 7.

in order to ascertain his or her damages.[4] *See* Opp'n, p. 8.

Class membership cannot be determined based on mere purchase of cards within a specified period of time. The Defendant's conduct in the abstract is not problematic. The cause of action turns on individual, subjective intent. This will be a jury trial. As such, the defendant is entitled to a jury determination of the stated intent of individual purchasers of Defendant's cards.

### b. *Applicability of State Gambling Laws*

The parties dispute whether the Court is required to apply all fifty states' gambling laws. Plaintiffs submit that "certification of a nationwide class in this case does not require identification, extensive analysis, or application of the gambling laws of the fifty states." *See* Mem. of P. & A., p. 10. Plaintiffs contend their claim is predominately of a federal nature, that Defendant's violations of federal law are sufficient in and of themselves to state a civil RICO claim, and, as such, no state-by-state legal analysis must be done. Defendant argues this matter must be determined on the basis of individual state gambling laws, and these variations will "swamp" common issues and defeat predominance.

Plaintiffs' First Amended Complaint ("FAC") asserts violations of 18 U.S.C. § 1962(c)–(d). A "pattern of racketeering activity" is defined by 18 U.S.C. § 1961(1)(A)–(B). 18 U.S.C. § 1961(1)(A) requires that the alleged racketeering activity be "chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1)(B) defines racketeering activity as "any act which is indict-able under one of the following provisions of title 18, United States Code: ... section 1952 (relating to racketeering), section 1953 (relating to interstate transportation of wagering paraphernalia), ... section 1955 (relating to the prohibition of illegal gambling businesses). . . . ."

To allege a RICO violation under § 1961(1)(A), "plaintiffs must allege that, under the penalty statutes in those states, the alleged crimes are punishable by more than one year imprisonment." *Schwartz (I)* at 1559. This Court has stated that these variations "may pose difficulties to plaintiffs later on if they attempt to certify a class because each state's criminal law differs." *Id.* at 1555, n. 3. With regard to § 1961(1)(A), since any individuals who bought cards in states where penalties are less than one year cannot be included in the class, the Court would have to examine and to apply the gambling laws of all fifty states. Because § 1961(1)(A) defines "racketeering activity" solely with respect to state law, variation in state law would predominate.[5]

The Court did not squarely address § 1961(1)(B) in its previous Order. As stated, § 1961(1)(B) defines racketeering activity with reference to a number of federal statutes. The felony vs. misdemeanor distinction is relevant with respect to § 1961(1)(A), but is irrelevant with respect to § 1961(1)(B).

▓▓▓▓ Section 1952 (the "Travel Act") proscribes interstate travel or transportation in aid of racketeering enterprises if the accused acts with "intent" to commit certain acts. No facts demonstrate such intent in this matter. More important, it is the intent

---

4. Defendant states that each class member would have to show: (1) the amount spent on Upper Deck cards in the class period; (2) the cards purchased by pack; (3) the percentage of purchases attributable to the chance of obtaining an insert card; (4) the percentage purchased for other reasons; (5) the insert cards being sought; (6) the insert cards obtained; (7) the subjective value of the insert cards obtained; (8) the objective value of the cards obtained; (9) the non-insert cards obtained; (10) the subjective value of the non-insert cards received; and (11) the objective value of the non-insert cards received. While the Court does not necessarily agree with each point, the list is instructive.

5. Plaintiffs argue that their claim is governed by § 1961(1)(A) because this section "means only that the offense must be one that generically was chargeable under state law at the time it was committed; in other words, a court need only determine whether the complaint alleging the RICO violation 'charges a type of activity generally known or characterized in the proscribed category.'" *See* Mem. of P. & A., p. 13, citing *United States v. Forsythe*, 560 F.2d 1127, 1137 (3d Cir.1977). The Defendant's conduct is not of a type "generally known or characterized in the proscribed category."

of the recipient of the card packages that may make the conduct actionable, not the intent of the Defendant.[6] Plaintiffs argue that " 'once a violation of a state criminal statute' has been alleged for purposes of the Travel Act, 'it is irrelevant whether that violation is classified as a felony or misdemeanor,' " citing *United States v. Polizzi*, 500 F.2d 856, 873, n. 17 (9th Cir.1974). Plaintiffs misstate the case law. *Polizzi* requires proof, not mere allegations, of such violations. The facts do not support such criminal proof. Hypothetical violations cannot be predicate acts of either RICO or the Travel Act. The same principle applies to alleged violations of 18 U.S.C. § 1955. Moreover, under § 1955, the actionable conduct must be related to an "illegal gambling business." This definition in turn necessitates "a violation of the law of the State or political subdivision in which it is conducted." *See* § 1955(b)(1)(i). It is a substantial question of fact and law whether Upper Deck is such a business under the law of any State. As such, the Court is confronted once again with the need to examine the laws of a plethora of states.

*Sikes v. American Tel. & Tel. Co.*, 179 F.R.D. 342 (S.D.Ga. Mar.26, 1998), is not to the contrary. *Sikes* never definitively reached, as the plaintiffs argue, whether a gambling business violates RICO if it violates the gaming laws of any state in which the gambling business is conducted. The court held only that the case would be manageable even if differing state gambling laws were applied.

Nor do *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985), or *Clothesrigger, Inc. v. GTE Corp.*, 191 Cal.App.3d 605, 236 Cal.Rptr. 605 (1987), apply to this case. *Shutts* involved whether application of Kansas law to non-Kansas claims violated the Due Process Clause of the Constitution and the Full Faith and Credit Clause. *Shutts* held that application of Kansas state law was unconstitutional in light of an examination of other state law that might have applied to non-Kansas claims and its possible conflict with Kansas law. As such, application of Kansas law to those plaintiffs without sufficient Kansas contacts violated the Due Process Clause. *Id.* at 821, 105 S.Ct. 2965.

> [W]hile a State may . . . assume jurisdiction over the claims of plaintiffs whose principal contacts are with other States, it may not use this assumption of jurisdiction as an added weight in the scale when considering the permissible constitutional limits on choice of substantive law. It may not take a transaction with little or no relationship to the forum and apply the law of the forum in order to satisfy the procedural requirement that there be a 'common question of law.' . . . Kansas must have a 'significant contact or significant aggregation of contacts' to the claims asserted by each member of the plaintiff class, contacts 'creating state interests,' in order to ensure that the choice of Kansas law is not arbitrary or unfair. *Id.* at 821–22, 105 S.Ct. 2965.

*Shutts* would dictate application of all the laws of the states in which any class plaintiff resided. At minimum, it is sufficient to say that *Shutts* does not support Plaintiffs' argument. *Clothesrigger* is not to the contrary.

In sum, the flaw in Plaintiffs' argument is that the manufacture, distribution, and marketing of sports cards is somehow a federal offense in and of itself. That is not the case. Where individuals do not purchase the cards in hope of obtaining a prize, there is no offense committed at all. Defendant does not violate California law by making its product. Defendant does not violate federal law by transporting its product across state lines.

---

6. Section 1953 does not require specific intent to proof a violation. Violations must be at least knowing violations. *See U.S. v. Mendelsohn*, 896 F.2d 1183 (9th Cir.1990). On these facts, however, Defendants may have a First Amendment defense. "For a first amendment instruction to meet these requirements, there must be some evidence that the defendants' speech was informational in a manner removed from immediate connection to the commission of a specific criminal act." *Id.* at 1185. *See also United States v. Dahlstrom*, 713 F.2d 1423 (9th Cir.1983). Finally, § 1953(a)(c)—the only conceivable subsection relevant to this matter—applies to matters used in "a numbers, policy, bolita, or similar game." Lotteries are not mentioned, as they are in similar language in 18 U.S.C. § 1955(b)(2). On the principle of *expressio unius, exclusio alterius*, § 1953 is not applicable to lotteries.

Defendant is not on its face running an illegal gambling business. Only if the Court finds violations of state law will a violation of civil RICO be found. Thus, state law claims underpin Plaintiffs' case.

As a fall-back, Plaintiffs submit a massive summary of the gambling laws of all fifty states in support of the contention that the gambling laws of the fifty state are substantially similar.[7] *See* Blakey Decl and supporting Appendix. However, the Blakey declaration only states that lotteries may constitute gambling in each of the fifty states. It does not speak to the issues of whether the specific conduct at hand its actionable under all fifty states or whether there may be variations in state law that preclude various individuals' causes of action.

Defendant submits an analysis detailing the variations among state gambling laws. *See* Lipp Decl. The major points of the analysis include: (1) "[t]he states vary in their interpretation as to what constitutes 'consideration' in the context of gambling"; (2) "[t]he states vary in their definitions of what constitutes a lottery and in their application of the states' laws to the various enterprises alleged to be lotteries"; (3) "[t]he states differ greatly in the degree of crime and severity of punishment for violating gambling laws"; and (4) "[t]he states vary in respect to whether they provide a mechanism or allow civil recovery of gambling losses .... states which statutorily allow recovery often impose a short statute of limitations."

If some states only classify gambling as a misdemeanor offense, or provide that gambling may be a misdemeanor or a felony based on a differing level of intent, or may bar certain claims based on an applicable statute of limitations, then the RICO allegations may or may not pertain to potential class members in certain states at all, or only after a state-by-state determination. A review of the Plaintiffs' Appendix of State Gambling Laws reveals that many, if not most, states have at least one misdemeanor classification for gambling.

**c.** *Superiority of Vehicle/Manageability*

Defendant alleges that certification of a class in this case would prove unmanageable, and that a class action is not a superior vehicle for resolution of Plaintiffs' claims. *See* Opp'n, p. 10–12. Defendant asserts that class certification would involve the Court in a host of mini-trials requiring proof under laws of the fifty states, proof of class membership, and proof of individual damages for which there are likely no records. Defendant argues that identification of class members alone would be daunting and that Plaintiffs "have no idea who is *or* is not a member of the class they seek to certify." Finally, Defendant maintains that notification procedures and determination of responses would overwhelm the Court.

Defendant relies heavily on *Nguyen Da Yen v. Kissinger,* 70 F.R.D. 656, 668 (N.D.Cal.1976) (denying class certification for class of unadopted Vietnamese children in the United States with parents in Vietnam seeking their return), to support its contentions. In the course of finding that the motion did not pass muster under Rule 23(b)(3), the *Nguyen Da Yen* court stated, "[e]ach child's situation is so individual that the individual questions would overwhelm the common questions." *See also Andrews v. American Tel. & Tel. Co.,* 95 F.3d 1014 (11th Cir.1996). When individualized determinations must be made, and then applied under the gamut of state law, class certification would provide massive manageability problems for a court.

Indeed, this action would focus on the "state of mind" of individual plaintiffs. "An identifiable class exists if its members can be ascertained by reference to objective criteria. A class description is insufficient, however, if membership is contingent on the prospective member's state of mind." *Gomez v. Illinois State Bd. of Educ.,* 117 F.R.D. 394, 397 (N.D.Ill.1987) (citations omitted); *Elliott v. ITT Corp.,* 150 F.R.D. 569, 573–74 (N.D.Ill.1992) ("Although there is no explicit requirement concerning the class definition in Fed.R.Civ.P. 23, courts

---

**7.** The cross-objections to expert analysis of state gambling laws are noted and respectively DE-

NIED.

have held that the class must be adequately defined and clearly ascertainable before a class action may proceed. An identifiable class exists if its members can be ascertained by reference to objective criteria, but not if membership is contingent on the prospective member's state of mind.").

Defendant points the Court to *Simer v. Rios,* 661 F.2d 655, 668 (7th Cir.1981). *Simer* involved allegations that an invalid state regulation regarding welfare assistance had improperly chilled qualified recipients from applying for aid to which they would be otherwise entitled. In part, the court held that the district court properly denied class certification because handling the case as a class action would require individual determinations of the "state of mind" of potential class members. Like the instant matter, the conduct at issue in *Simer* was not the difficult issue.

> It is the effect of the invalid regulation on the individual plaintiffs which constitutes the crux of the case. Proof of this element of the cause of action will be extremely individualized. This issue is not common to the entire class but rather depends on each individual's state of mind. To prove that each individual was discouraged from applying for assistance would initially require proof that the individual knew of the regulation. This would require a long series of mini-trials and would be an arduous task for the parties as well as the district court. Conjecture as to how proof at trial would be adduced illuminates the difficulty of the task.... [I]t is apparent that defendants' conduct of the lawsuit at even the initial stage of whether plaintiffs were aware of the regulation could lead to serious administrative problems. This is complicated by the fact that the 'state of mind' issue raises serious issues of credibility that are peculiarly within the province of the finder of fact and require individualized consideration. The substantive elements of plaintiffs' claims therefore indicate that trial on the state of mind issue would require consideration of each separate claim. *Id.* at 673.

The instant matter is likewise one focused substantially on "state of mind." Similar issues of credibility would arise that would necessitate individual inquiries into state of mind. It would be human, especially for adolescents, to respond to notice offering financial reward for the previous purchase of Defendant's cards. This possible mischief necessitates an individualized determination of a purchasing individual's motivation.

■ The Court's finding does not rest on potential differences and difficulty in ascertaining prospective plaintiffs' damages. Differences in class members' damage calculations do not prevent class certification. *See Epstein v. MCA, Inc.,* 50 F.3d 644, 668–69 (9th Cir.1995). But when damages questions are layered onto the other issues of fact and law, the Court's finding that this action is not appropriate for class treatment is reinforced.

In sum, the Court finds that this case presents manageability problems to such an extent that class certification would be improper under Rule 23(b)(3)(D).

### 2. Rule 23(a)

#### a. *Rule 23(a)(1): Impracticality of Joinder (Numerosity)*

Rule 23(a)(1) requires the Court to inquire whether the purported class is of such a numerous size as to make joinder impracticable. Plaintiffs in this case are faced with a "catch–22" problem. If they do not demonstrate to the Court that they have met this prerequisite to certifying a class action, their motion fails. However, based on the extent of the alleged class, a successful demonstration on this prong raises problems of manageability. For purposes of argument under Rule 23(b)(3), the Court has assumed the numerosity prong has been met. However, the Court now finds that Plaintiffs have failed to satisfy Rule 23(a)(1).

■ No specific minimum number of plaintiffs is necessary to meet the dictates of Rule 23(a)(1). *Arnold v. United Artists Theatre Circuit, Inc.,* 158 F.R.D. 439, 448 (N.D.Cal.1994). The Court does not require Plaintiffs to fix a precise number. The central question is whether Plaintiffs have sufficiently identified and demonstrated the existence of the numbers of persons for whom

they speak. They have not. Based on the information presented to the Court, the number of possible class members could range from as few as the class representatives, and possibly some family and friends, to millions.

In contrast to a Rule 12(b)(6) analysis, the Court will not rely on the cursory allegations of Plaintiffs. Plaintiffs must show some evidence of or reasonably estimate the number of class members. Mere speculation as to satisfaction of this numerosity requirement does not satisfy Rule 23(a)(1). *Nguyen Da Yen v. Kissinger, supra,* 70 F.R.D. 656, 661 (N.D.Cal.1976). If speculation were the standard, the Court would find Plaintiffs have met their burden under this prong. But speculation is insufficient. A higher level of proof than mere common sense impression or extrapolation from cursory allegations is required.

Plaintiffs' FAC is of little use to the Court in establishing the number of potential class members. Nothing more is provided than an annual sales figure. *See* FAC, ¶ 5. Sales volume standing alone cannot serve as the basis of a numerosity finding in this case. Beyond the sales volume statistic, the AC is wholly conclusory. *See, e.g.,* FAC, ¶ 5: "Many of the persons who purchase Upper Deck's card packages in search of valuable chase cards are children and teenagers, who may spend up to several hundred dollars per month on the habit." Even the allegations of the named representative Plaintiffs leave the Court in doubt as to numerosity. Without assistance of Plaintiffs, the Court has no idea who buys sports cards, or even how many, for the purpose of finding chase cards as opposed to other rationales. This is not a matter of general knowledge or common sense.

Plaintiffs argue "no more is required" to prove numerosity than the common sense finding that hundreds of thousands of persons purchased Upper Deck's cards. *See* Reply, p. 4. But mere purchase is not the question. Instead, it is the reason behind the purchase. Plaintiffs point the Court to *Schaefer, supra,* for the proposition that "differences in the amount of damages, the size or manner of purchase, the nature of the purchase, and even the specific document influencing the purchase . . . ," *id.* at 129, but that statement is applicable to the typicality prong, not numerosity prong.

Plaintiffs point to *Blackie v. Barrack, supra,* 524 F.2d at 901, n. 17, for the proposition that a court need only make a "reasonable judgment" on the basis of the pleadings to find numerosity is satisfied. But footnote 17 states, "[w]hile the court may not put the plaintiff to preliminary proof of his claim, it does require sufficient information to form a reasonable judgment." *Id.* Reasonable judgments cannot be made out of thin air; sufficient information to make such a judgment is a required preliminary step. Case law is consistent with this view. *See, e.g., Marcial v. Coronet Ins. Co.,* 880 F.2d 954, 957 (7th Cir.1989) (plaintiffs need not specify exact number in class but cannot rely on conclusory allegations and speculation as to the size of the class); *Polich v. Burlington Northern, Inc.,* 116 F.R.D. 258, 261 (D.Mont. 1987) (class action relating to closure of locomotive shops denied based on uniqueness of employee representations on employer's promise to keep shops open forever) ("Mere speculation as to satisfaction of the numerosity requirement is not sufficient. Rather, plaintiffs must present some evidence of, or reasonably estimate, the number of class members. . . . The apparent uniqueness of the claims of the affected employees also eases doubts as to whether the numerosity requirement of Rule 23(a)(1) is satisfied herein."); *Wilcox,* 97 F.R.D. at 445 ("Plaintiffs have not shown the actual existence of a class because they have failed to prove that other individuals had the same understanding of 'prime rate' as the named plaintiffs had. To cure this failure would require individual inquiry into each class member's understanding or knowledge of the term to determine whether or not that individual is a member of the class. This shows that common issues do not predominate in these cases."); *Nguyen Da Yen,* 70 F.R.D. at 661 ("In order for the court to be able to determine whether the class is so numerous that joinder of all the members would be impracticable, plaintiffs must show some evidence of or reasonably estimate the number of class members. Mere speculation as to satisfaction of this

numerosity requirement does not satisfy Rule 23(a)(1).").

Plaintiffs argue that the Court should take into account defendant's annual sales volume, citing *Tylka v. Gerber Prods. Co.,* 178 F.R.D. 493, 499–500 (N.D.Ill.1998) (certifying class action over adulteration of baby food). However, in *Tylka,* the defendant readily conceded the numerosity point and there was no debate regarding individual consumers' relationship to the product. Purchase of the product alone put them into the class. More important, reliance on raw numbers of customers or Defendant's sales volume, without more, would be irrelevant to the key statistic of what percentage or amount of sales went to those searching for "chase" cards.

Finally, determination of whether an individual bought Under Deck's cards for the "chase" cards or for other reasons does not involve an inquiry into the merits of the case. Plaintiffs allege that determination of injury would constitute an inquiry into the merits of the claims, citing *Smith v. University of Wash. Law Sch.,* 2 F.Supp.2d 1324, 1341 (W.D.Wash.1998). However, in *Smith* the court held that an inquiry into class members' *damages* and/or standing would constitute an inquiry on the merits. That is not the case in the instant matter. The key issue for purposes of this motion is how many people purchased the cards for the chance to obtain an insert card. Plaintiffs failed to provide any evidence on this issue. In fact, Defendant points out that:

> In depositions, interrogatories and document requests Upper Deck specifically requested that Plaintiffs provide Upper Deck with all facts supporting their numerosity allegations ... Plaintiffs initially refused to answer such obviously relevant discovery on the grounds that it was 'premature.' As a result of the meet and confer process, Upper Deck has now been assured that it has received all documents that are relevant to the issues of class certification. None of these documents reveal the identity of anyone, other than [the named] Plaintiffs and a few other persons, as purchasers of Upper Deck trading cards who were seeking to obtain insert cards. *See* Opp'n, p. 12, n. 8.

Failing such proof, Plaintiffs' claims are overly speculative and insufficient to satisfy Rule 23(a)(1). While the Court *suspects* that there are enough potential class members to more than adequately meet the minimum required by Rule 23(a)(1), a mere hunch by the Court is insufficient grounds. The Court finds that Plaintiffs have failed to satisfy Rule 23(a)(1).

▮▮▮ The Court's reaches its conclusion despite review of the Chapin Declaration and Paragraphs 8, 9 and 10, including Exhibits "F" and "G" of the Roddy Declaration. The Court does not deny Defendant's Motion to Strike; that question is reserved. The material is relevant and substantially forwards Plaintiffs' proof for purposes of Rule 23(a)(1). But the submission of this material is likely a violation of the letter and spirit of discovery rules and the Magistrate Judge's Order of October 20, 1998. Plaintiffs should have complied with the request for production and then objected. By suppressing documents, a party takes an implicit risk that it will not be allowed to use the material at a later date. Likewise, Defendant properly states the law: "It is well accepted that raising of new issues and submission of new facts in reply brief is improper." *Provenz v. Miller,* 102 F.3d 1478, 1483 (9th Cir.1996), cert. denied, —— U.S. ——, 118 S.Ct. 48, 139 L.Ed.2d 14 (1997). Plaintiffs contend that their burden to show numerosity is met by an examination of their Complaint alone. Plaintiffs make their stand; should this matter arise again, they will be expected to live with it.

### 3. Rule 23(a)(2): Commonality: Law or Fact

▮▮▮ Commonality "does not require that all members of the class be identically situated if there are substantial questions either of law or fact common to all." *Harris v. Palm Springs Alpine Estates, Inc.,* 329 F.2d 909, 914 (9th Cir.1964). Courts should take a "common sense approach" to whether the class "is united by a common interest in determining whether a defendant's course of conduct is *in its broad outlines* actionable, which is not defeated by slight differences in class members' positions." *Blackie, supra,*

524 F.2d at 902 (emphasis added). The focus for purposes of Rule 23(a)(2), (b)(2) is on the defendants' conduct. *Smith, supra,* 2 F.Supp.2d at 1341. "The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3). Indeed, Rule 23(a)(2) has been construed permissively.... Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019–20 (9th Cir.1998).

■ The Court finds that Plaintiffs fail to satisfy this prerequisite. Despite the more permissive standard to be applied, and without requiring identical claims, Defendant's conduct—*"in its broad outlines"*—is not a common source of illegal activity without reference to *uncommon* questions of law and fact. This case does not present the Court with vanilla allegations of illegal "standardized conduct." *Cf. Peterson v. H & R Block Tax Serv., Inc.,* 174 F.R.D. 78, 82 (N.D.Ill. 1997). As individualized questions of fact would predominate should this class be certified, and as the Court finds that it would have to apply the different laws of fifty states, there is not sufficient commonality to justify class certification.

## 4. Rule 23(a)(3): Typicality

■ Rule 23(a)(3) provides that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."

"The typicality element requires the Court to look at the interests of the named plaintiffs and assure that they are in line with those of the class. The named plaintiffs' claims should arise out of the same course or conduct that gives rise to the class claims and be based on the same legal theories that would be generally relied upon by the class; the court should look at whether the class members have similar injuries, whether the allegedly wrongful activity is not unique to named plaintiffs, and whether other class members have been injured by the same conduct. Typicality refers to the nature of the claim or

defense of the class representative, and not to the specific facts from which it arose or the relief sought. Accordingly, differences in the amount of damages, the size or manner of purchase, the nature of the purchase ... will not render a claim atypical in most securities cases." *Schaefer, supra,* 169 F.R.D. at 128–29 (citations omitted).

"The claims of the named plaintiffs need not be identical to the claims of the class. They need only 'arise from the same remedial and legal theories.' When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually satisfied, irrespective of varying fact patterns which underlie individual claims. Typicality turns on the defendant's actions toward the plaintiff class, not particularized defenses against individual class members." *Smith, supra,* 2 F.Supp.2d at 1342 (citations omitted) (quotations omitted). *But see Hanon, supra,* 976 F.2d at 508 ("class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation.").

■ Ordinarily, whether or not a defendant engaged in the same course of conduct with respect to potential class members would be the extent of the Court's inquiry. However, on this matter, that cannot be the sole basis of the Court's inquiry. At oral argument, Plaintiffs hinted that Defendant's conduct is perhaps per se illegal. Not so. The conduct may be actionable in some states and not another and may be actionable vis-a-vis some individuals and not others. Thus, the Court's ability to sanction the Defendant's conduct turns not on an analysis of that conduct in the abstract, but on how (1) potential class members interacted with that conduct and (2) whether they live in a state in which the conduct may subject Upper Deck to criminal liability. The Court has already disposed of Plaintiffs' argument that the Court need not look to state law.

Based on the above analysis, both in this section and in that section, *supra,* discussing Rule 23(b)(3), the Court finds that Plaintiffs

claims do not meet the standards set forth in Rule 23(a)(3).

### 5. Rule 23(a)(4): Adequacy of Representation

Rule 23(a)(4) mandates that "the representative parties will fairly and adequately protect the interests of the class." The Court looks to both the qualifications of counsel and the adequacy of proposed representative parties. *Schaefer, supra,* 169 F.R.D. at 130. The Court finds that Plaintiffs meet this prong, both in terms of adequacy/qualifications of counsel and adequacy of named class representatives vis-a-vis other class members. Defendant's issues regarding individual named representatives will be brought out at trial whether or not a class is certified.

### III. Conclusion

Based on a thorough review of the pleadings and attached exhibits and declarations, and after oral argument, the Court finds that this case does not meet the requirements for class certification under Fed.R.Civ.P. 23. The Motion for Class Certification is DENIED.

IT IS SO ORDERED.