RENDERED: FEBRUARY 11, 2022; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0456-MR

TOM SWEARINGEN,
INDIVIDUALLY AND ON BEHALF
OF ALL SIMILARLY SITUATED                                        APPELLANT


                        APPEAL FROM FAYETTE CIRCUIT COURT
v.                      HONORABLE JULIE M. GOODMAN, JUDGE
                        ACTION NO. 19-CI-00462


HAGYARD DAVIDSON MCGEE
ASSOCIATES, PLLC; JOHN DOES 1-
100; DEAN DORTON ALLEN FORD,
PLLC; DR. DWAYNE RODGERSON;
DR. MICHAEL SPIRITO; DR.
MICHAEL T. HORE; AND DR.
ROBERT J. HUNT                                                    APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE: GOODWINE, K. THOMPSON, AND L. THOMPSON, JUDGES.

THOMPSON, K., JUDGE: Tom Swearingen individually, and on behalf of a

putative class of similarly situated parties, appeals from the Fayette Circuit Court's

grant of summary judgment to Hagyard Davidson McGee Associates, PLLC, Dr. Michael T. Hore, Dr. Dwayne Rodgerson, Dr. Michael Spirito, Dr. Robert J. Hunt, and Dean Dorton Allen Ford, PLLC (collectively appellees), which dismissed Swearingen's original class action complaint, and the trial court's denial of Swearingen's contemporaneous motion to file an amended class action complaint. Having determined that the trial court's judgment was not an abuse of discretion and is not otherwise erroneous, we affirm.

In February 2019, Swearingen filed a class action complaint against the appellees and John Does asserting claims of: (1) fraudulent inducement and/or fraudulent misrepresentation; (2) breach of express warranty; (3) civil conspiracy; (4) aiding and abetting a civil conspiracy; (5) aiding and abetting fraud; (6) negligence; and (7) negligence *per se*. As will prove to be relevant later, the complaint was not verified by Swearingen.

In the complaint, Swearingen listed twenty-four horses that he had purchased at the Keeneland sales between 2007 and 2016. The focus of the complaint was on allegations that the appellees had for years altered the dates of procedure shown on digital radiographs[1] taken of horses in order to make it appear that x-rays had been performed within the three weeks prior to the horse's eventual

---

[1] The term "digital radiograph" and "x-ray" are used interchangeably herein as they were within the complaint. Digital radiograph began replacing physical x-ray films in Keeneland's repository in 2006.

sale at Keeneland. Those x-rays which contained false dates were placed in the "repository" at Keeneland where they could be viewed by potential buyers in advance of sale. Swearingen alleges that the misdated x-rays caused buyers to purchase horses they would not have otherwise, and that if they had known of this practice they "would not have participated in the Keeneland sale in the first place and never would have bought the aforementioned horses." Swearingen explicitly alleged that he "would review or have his agents review the radiographs of such horse" prior to making a purchase at Keeneland and "did in fact review the x-rays in the Repository[.]"

The complaint specifically defined the class of similarly situated individuals as those: "who purchased one or more horses at Keeneland . . . who reviewed digital x-rays in the Repository . . . prior to bidding . . . and who, if it had been disclosed in advance . . . would not have purchased such horses at the sale[.]" Two alleged characteristics of Swearingen's ostensible class would ultimately determine the fate of this litigation. First, that the plaintiffs or their agents reviewed digital x-rays in Keeneland's repository. Second, that they would not have purchased their horses had they known of improprieties in radiograph dating.

From the outset of the litigation, the trial court was concerned as to the nature of this amorphous class of buyers who allegedly would not have even purchased their horse(s) but did not suffer any traditionally quantifiable or

calculable damages, did not purchase any injured horse in reliance upon an incorrectly dated x-ray, did not lose money on a horse purchased and, seemingly, had no regrets regarding their purchase. At the January 2, 2020 status conference, the trial court expressed its concern as follows:

> So, his class is, "I would have never bought a horse at Keeneland if I knew that this had happened." Okay. Well – so if he never bought a horse – so only those individuals who would have never gone to Keeneland, never would have bought a horse at Keeneland if they had known that, that's your class.

There was no allegation within the complaint or within the litigation that any back-dated radiograph had concealed an infirmity or injury that caused a buyer, acting in reliance on such an x-ray, to unknowingly purchase an injured horse.

At this conference, the trial court went on to request that the parties take Swearingen's deposition at their earliest convenience, explaining that afterwards it planned on scheduling another status conference. That follow-up conference was set for March 5, 2020.

Swearingen's deposition was conducted on February 11, 2020. His testimony was inconsistent with both the specific allegations in his class action complaint and his prior written discovery responses. Specifically, Swearingen admitted under oath that he never used the repository and never relied on any information in the repository. He also admitted to purchasing a horse at Keeneland

-4-

in 2019, despite already knowing at that time that radiograph dates could be back-dated.

Swearingen, in both his complaint and discovery responses, had stated that he always had a veterinarian review the repository radiographs before he purchased a horse at Keeneland. However, Swearingen admitted at his deposition that he did not retain a veterinarian of his own to review the radiographs or create a report regarding them. Swearingen also admitted he never went to the repository or had anyone go to the repository on his behalf to look at radiographs.

As to radiograph reports (which Swearingen later claimed to have confused with the actual radiographs), he admitted during his deposition that he did not look at the dates of when radiographs were taken. Swearingen admitted he did not even know whether the reports reflected when the radiographs were taken. Swearingen acknowledged that he never reviewed or relied on the date on which a radiograph was taken in bidding and he could not identify any condition of any horse purchased by him that should have been, but was not, noted in a radiograph report he reviewed. Swearingen also admitted that he did not know whether any radiograph misrepresented any horse as of the date of its sale.

> Q: So regardless of when the radiograph was taken, the reports to the best of your knowledge accurately depicted the condition of the horse you bid on?
>
> A: Correct. That's correct, Mike. You're right.

Therefore, Swearingen's factual allegations underlying the causation and reliance elements of his claims were wholly undermined by his deposition testimony.

Regarding the damages element of his claims, Swearingen further admitted that he could not articulate *any* damages he had suffered because of the alleged back-dating of radiographs. Of twenty-two yearlings he had purchased, Swearingen only identified one that may have had a problem discerned after its purchase and that one issue was described by Swearingen's own veterinarian as the result of transport. Even with that one horse, Swearingen recouped its full purchase price. Swearingen could not even say that any radiograph or radiograph report failed to accurately depict a horse's condition at the time of purchase.

Based upon Swearingen's deposition testimony, the appellees moved for summary judgment on all counts asserting that Swearingen's deposition showed him to have no compensable damages and that the factual allegations contained in his complaint were in fact false. Appellant's counsel responded by offering an affidavit from Swearingen, dated February 20, 2020, attempting to explain, and change, his testimony. Counsel also filed a motion for leave to file a first amended complaint which changed both the underlying factual basis of their claims and their damage model.

Swearingen stated in his affidavit that what he really meant when he testified that he did not retain a veterinarian of his own to review the radiographs

or create a report regarding them was that "a vet [not retained by Swearingen] had always reviewed them in formulating the report which I reviewed. In most cases, the consignor would have a copy of the report with him for me to look at when I saw the horse."

The affidavit included allegations against the conduct of one of the defense counsel wherein Swearingen alleged: "Mr. Casey seemed very angry and irate and raised his voice quite a bit. Since I have never been in any type of deposition or legal case before, I was honestly intimidated and scared but trying to answer the questions truthfully, but Mr. Casey was practically shouting at me. . . . Mr. Casey was so aggressive he had me very confused. I felt he was trying to confuse me by presenting a question and then re-presenting it in a different way."

Based on those allegations, the trial court obtained a copy of the video recording of the deposition and viewed its entirety prior to its upcoming March 5, 2020 hearing. After watching the video, the trial court stated:

> I found none of the attorneys to have acted
> inappropriately. I found all the attorneys to have been
> civil. I found the behavior between Mr. Casey and Mr.
> Swearingen to be cordial. I believe Mr. Swearingen
> regularly called Mr. Casey "Mike." But more
> importantly I'll note that Mr. Rambicure is an excellent
> litigator and not once did he object to the behavior or
> how Mr. Casey was treating his client. There was never
> any arguments that he was being treated inappropriately.
> So I find that statement in that affidavit to be less than
> genuous (sic).

Based upon its review of the affidavit and the deposition, the trial court concluded that the affidavit was actually drafted to protect counsel and was contrary to the interests of Swearingen, stating: "Mr. Swearingen is bound by his deposition. The Court holds him to that. The Court has a problem with the affidavit . . . I don't think the affidavit was written to protect Mr. Swearingen. The Court's belief is the affidavit was written to protect the attorneys."

Swearingen's affidavit also sought to distance himself from the admission that he had been "recruited" to act as a plaintiff in the litigation by a Mr. Hal Snowden who was a paid consultant of the appellant's counsel's firm. At its subsequent hearing of March 5, 2020, the court stated:

> But in the deposition he stated very clearly – and I marked the pages that Mr. Snowden recruited him – that he would not have brought suit if he hadn't talked with Mr. Snowden; he had not given it any thought until he talked with Mr. Snowden, but that document [the affidavit] you had him file or that was filed I take it before you came in disputes all of that. So then I have a situation where the Court, for lack of a better word, Mr. Colson, needs to say, well, were you lying then or are you lying now[?] I mean, it was very clear and it was asked very clearly was he recruited and his answer was yes.

Given that Swearingen's deposition revealed that he has no justiciable claim under his original complaint, the court addressed the tangential issue that there was no longer any lawful class representative – even before a class had been certified. As the trial court stated:

-8-

[Y]ou do not file a class action and try to use it as for purposes of discovery to find a class. And that's where this Court thinks – that's where this Court believes we are, that there is no class, there's not been a class that's even been located. We have one gentleman who doesn't meet the requirements of the class as pled, and that the goal is to try to use discovery to see if there's a class.

. . . .

So now we're stuck with the complaint where under oath very clearly the class representative has made it clear that he does not meet the elements.

Swearingen's counsel agreed with that legal assessment, stating in response that this was why they had moved to amend the complaint.

On March 24, 2020, the trial court issued its order denying Swearingen's motion to file an amended complaint as untimely and dismissing Swearingen's individual and class action claims with prejudice.

On appeal, Swearingen argues that the trial court erred by: (1) denying his motion to file an amended complaint; and (2) dismissing the class action on the basis that Swearingen was not an appropriate class representative. The second assignment of error includes the assertions that the trial court erred by: (a) not permitting class certification discovery prior to dismissing the class action; (b) not permitting the modification of the class definition; (c) not permitting the identification of an alternative class representative; and (d) not recognizing that the original and amended complaints stated *prima facie* causes of action pursuant to

-9-

Kentucky Rules of Civil Procedure (CR) 23. A third assertion of error made by Swearingen was that the dismissal of a separate breach of warranty claim against Dean Dorton Allen Ford, PLLC and Hagyard was not addressed by the trial court and should not otherwise have been dismissed.

There is no argument made by Swearingen that the dismissal of his original complaint was improper given his deposition testimony. In fact, the propriety of that action is conceded. The original complaint was dismissed based upon testimony by the sole plaintiff *and* putative class representative whose testimony made it quite clear that he had sustained no injury attributable to any actions of the appellees.

Our case law establishes that an abuse of discretion standard of review applies to trial court rulings on whether to grant leave to amend pursuant to CR 15.01. *Laneve v. Standard Oil Co.*, 479 S.W.2d 6, 9 (Ky. 1972). Under the Rule, leave to amend "shall be freely given when justice so requires." This Court has consistently supported a liberal interpretation of this Rule. However, CR 15.01 remains within the discretion of the trial court whose ruling will not be disturbed unless it is clearly an abuse. *Graves v. Winer*, 351 S.W.2d 193 (Ky. 1961). Based upon the facts presented in this matter, we do not agree that the trial court abused its discretion in denying the filing of the amended complaint and

furthermore do not believe that the interests of justice would have been served had it allowed the amended complaint to be filed.

The question presented for our decision is not only whether the appellant's new and belated contentions could subject the appellees to liability. The decisive issue to be determined is whether the trial judge acted properly in refusing the appellant leave to inject a new theory of liability into the case under the circumstances presented. Swearingen in effect abandoned his initial claims and attempted to inject a completely new claim of liability. In view of the time that had passed and the fact that he only attempted to change his previously false allegations after his deposition was completed (which served to alter basic factual and legal issues in the case), we may conclude that the trial court acted well within its discretion when it denied leave to file the amended pleadings.

While the trial court referred to Swearingen's motion for leave to amend as "untimely," such characterization encompassed more than the mere time which had passed between the filing of the original complaint and the motion to amend. The tendered amendment was "untimely" in the context that it was not submitted until after Swearingen's sworn testimony proved his original claims to be meritless. The trial court discussed the basis of its reasoning at length on the record and considered the competing interests of the parties including potential, but not yet identified, members.

-11-

The Court: [T]he case law is so clear that a case has to be dismissed if the class representative isn't a member of the class. . . . [T]hat's a prerequisite. That is so clear under the law that it's not even named . . . It's a given, Mr. Miller.

Counsel: Which is why we have requested leave to amend the class, and if he's deemed not – if we're not allowed to amend the class to define to be someone that looked at repository reports instead of x-rays, then –

The Court: You've had 13 months to amend that complaint and the Court does not find that motion to be timely based on all the time, all the efforts you've had, all the things that have gone on. So the Court does not find it timely filed to amend that complaint. So now we're stuck with the complaint where under oath very clearly the class representative has made it clear that he does not meet the elements. He is not . . .

Counsel: He is not a member of the class . . . .

The Court: And under [*Gevedon v. Purdue Pharma*[2]] –

_____

[2] *Gevedon v. Purdue Pharma*, 212 F.R.D. 333, 337 (E.D. Ky. 2002) (emphasis added) (citations omitted):

> The Plaintiffs must also be members of the proposed "class." This element stems from the real party in interest requirement of Rule 17(a) of the Federal Rules of Civil Procedure and is closely related to subsection (a)(4) of Rule 23, requiring that the representatives adequately protect the interest of the proposed class members . . . . Here, the Plaintiffs assert that they are "proposed representatives on behalf of a Class seeking injunctive relief and damages." . . . However, the named Plaintiffs do not appear to have suffered "severe disabling addiction; actual addiction; the consequences of addiction; the reasonable fear of

Counsel:    Which I agree which is why we sought to amend it.

The Court:  Well, but it's not timely.

Counsel:    I understand.  I understand.

The Court:  You've known, if [Swearingen] worked with you as long as he supposedly did . . . then he knew exactly what that complaint said. . . .  I believe that man told the truth and tried desperately hard to be totally candid and honest with the Court in his deposition.  He made it clear in that that he did not meet the elements of a class rep.

Counsel:    I agree.

The Court:  So, in agreement then I would take it that you would not dispute that it needs to be dismissed under [*Gevedon v. Purdue Pharma*?]

Counsel:    We have alternatively requested leave, if we have to stay with the original class definition as opposed to amending the class definition, to seek leave to find a new plaintiff that fits the original class.

The Court:  Well, the problem with that is you had 13 months and the case law is very clear that you don't file a lawsuit.  You don't put it

addiction and /or the consequences of addiction; and other adverse conditions, including physical, mental, and/or emotional harm, death, and loss of consortium." . . . *Thus, even if the allegations in the complaint would support the existence of a well-defined "class," there is not enough evidence or information for the Court to conclude that the named Plaintiffs would fall within the proposed "class."*

-13-

together as an attorney, under [*Bodner v. Oreck Direct*,[3]] and then go out and try to use discovery to find a class rep.

As the trial court stated, Swearingen was still the only plaintiff to come forward and he had testified under oath that he was not even a class representative.

Looking to the amended complaint, we must first note that Swearingen's sworn admissions, once made within the litigation, were not susceptible to a "do over" in the form of a post-deposition affidavit that directly contradicted his deposition testimony. *See Lipsteuer v. CSX Transp., Inc.*, 37 S.W.3d 732, 736 (Ky. 2000) (explaining "an affidavit which merely contradicts earlier testimony cannot be submitted for the purpose of attempting to create a genuine issue of material fact[,]" because, "if such practice were allowed, the use

---

[3] *Bodner v. Oreck Direct, LLC*, No. C 06-4756 MHP, 2007 WL 1223777, at *2-3 (N.D. Cal. Apr. 25, 2007) (unpublished):

> In light of plaintiff's undeniable and overwhelming ignorance regarding the nature of this action, the facts alleged, and the theories of relief against defendant, the court cannot conclude that he has met the threshold typicality or adequacy requirements of Rule 23(a). It is clear from the record that plaintiff's counsel, and not plaintiff, is the driving force behind this action. Such a "cart before the horse" approach to litigation is not the proper mechanism for the vindication of legal rights[.]
>
> . . . .
>
> Indeed, counsel himself admitted at the hearing that he or his firm had the research performed on the product at issue and had a theory about the product's deficiencies. *Then*, armed with that information they went in search of a plaintiff, never mind the lack of a fitting plaintiff.

-14-

of summary judgment would be even more severely curtailed."). The changes made to the allegations in Swearingen's amended complaint addressed the two substantive failures revealed in his deposition. These changes consisted of adding an alternative of viewing or relying upon "*and/or radiograph reports based on those x-rays*" in addition to the original allegations that stated that he had actually "*reviewed digital x-rays in the* [*r*]*epository*" – which he admitted that he had not done.[4] Second, to allege at least some form of damage, Swearingen added "*or would have bid and paid less for such horses*" to his original (disproven) allegation that he "*would not have purchased such horses at the sale(s)*[.]"

In determining whether circumstances justify leave to amend, the trial court can "consider such factors as the failure to cure deficiencies by amendment or the futility of the amendment itself." *First Nat'l Bank of Cincinnati v. Hartman*, 747 S.W.2d 614, 616 (Ky.App. 1988) (citations omitted). That's precisely the circumstance presented here. Even if the factual allegations contained in Swearingen's tendered amended complaint were accepted as true, he could not now allege that he relied upon, and was thereafter injured by, a misrepresentation made by the appellees regarding the condition of any horse that he purchased. He cannot allege that any of the appellees prepared a back-dated radiograph or a report

---

[4] There is no reason given why the amended complaint added new, alternative verbiage instead of deleting and replacing the allegations that had already been proven false.

regarding any horse that he purchased, nor can he assert that any such radiograph or report inaccurately depicted a horse he purchased.  Had the trial court allowed the amended complaint to be filed, Swearingen's prior admissions would still preclude him from asserting the elements of actual reliance and injury which are necessary to his claims – either personally or as a class representative.

In an action for fraud in Kentucky, the party claiming harm must establish six elements of fraud by clear and convincing evidence as follows:  (a) material representation; (b) which is false; (c) known to be false or made recklessly; (d) made with inducement to be acted upon; (e) acted in reliance thereon; and (f) causing injury.  *Wahba v. Don Corlett Motors, Inc.*, 573 S.W.2d 357, 359 (Ky.App. 1978).  The last two elements are, and will remain, absent from any action Swearingen would assert.

Swearingen's second assignment of error is that the trial court erred in dismissing the class action on the basis that Swearingen was not an appropriate class representative.  Such allegation invites discussion of CR 23.01 and 23.02 which govern class certification in Kentucky.  Taken together, those two Rules provide a comprehensive roadmap to class certification.  The mandates of both Rules must be satisfied before a class may be certified.

This invitation to discern and analyze all the factors found in CR 23.01 and 23.02 merits little discussion.  The whole of this argument misses the

point that once we have determined that the trial court's denial of Swearingen's motion for leave to amend was not an abuse of discretion, there is simply no case left for appellant or his counsel to prosecute. Likewise, there is no class representative left to advance any causes of action. The existence of a justiciable cause of action and an identified class representative are elemental to the very existence of a class action. Swearingen, as well as his alleged class's claims, were disposed by summary judgment prior to there being any attempt to certify a class pursuant to our civil rules. It is fundamental that a purported class representative must have *some* justiciable cause of action before there could be any analysis of factors such as numerosity, commonality, typicality, or adequate representation found in the civil rules. Swearingen, as a class representative, had no valid claim and therefore could not serve as a representative for any (presently unknown) injured party that might exist. It is axiomatic that without there being a class representative, there can be no class action. This issue is further discussed within our analysis of the trial court's denial of pre-certification discovery and refusal to allow the litigation to continue.

Within his second assignment of error Swearingen alleges the trial court erred by not permitting class certification discovery prior to dismissing the class action. In this argument, Swearingen fails to address the fact that the trial

-17-

court's litigation plan was not only sound but agreed to by his counsel at the

January 2, 2020 status conference.

> The Court: What I'd like you to do is let them take his [Swearingen's deposition]. Based on what he says and establishes what his claims are and what his facts are then what I'd like to do is convene another one of these type situations where you come forward and say, "Based on his allegations and what he sees his claims we think these would be the common types of claims," then we will discuss what discovery can go forward then to deal with that. But until I get that locked in I'm not going to let you go out and start taking discovery.

> Counsel: And that's fine. I just want to make sure I understood it.

However, the trial court had no issue with counsel continuing his own

non-formal investigations.

> Counsel: But as you said, there's nothing that prohibits us from doing what you've –

> The Court: Well, there's nothing –

> Counsel: – suggested.

> The Court: – go talk to these people [persons who had purchased horses at the Keeneland sales] all day long.

After the trial court again explained that once Swearingen was deposed,

the court would be in a position to make determinations on the breadth of formal

discovery, counsel for Swearingen stated, "I think we understand and I think it makes sense. That's fine, Your Honor."

While Swearingen complains that he was unable to conduct formal discovery of potential class members, he always had access to Keeneland's online "Sales Summaries" database. That database identifies each horse sold, the consignor, the buyer, and the purchase amount.[5] This database dates back to 1999, prior to the implementation of digital imagery being utilized by the repository. When the court asked during its status conference why discovery on the identity of buyers was necessary when the names were public knowledge, Swearingen's counsel stated that it also needed contact information for the buyers. When asked whether he had even undertaken a Google search for that information, counsel conceded that he had not. Despite the retention of Mr. Snowden to recruit clients, counsel's advertisement of its claims on television, an article in the Wall Street Journal, and numerous horse industry publications, the appellant was the only individual who agreed to participate in the lawsuit. As stated by the trial court at the March 5, 2020 hearing and discussed above, "the case law is very clear that you don't file a lawsuit. You don't put it together as an attorney . . . and then go out and try to use discovery to find a class rep."

---

[5] *See* KEENELAND SALES SUMMARIES, http://flex.keeneland.com/summaries/summaries.html (last visited Feb. 3, 2022).

Not one of the opinions cited by Swearingen in these arguments supports the position that a class complaint cannot be dismissed prior to "class discovery." An analysis of each cited opinion shows no precedent for allowing an alleged class, with no representative, and no justiciable claim, to have unrestricted utilization of the court's subpoena power for a limitless duration in the hope that it may one day discover a representative with standing for a class of persons who may have a cause of action. What appellant's counsel would invite is a true "fishing expedition." No court has held in a factual context similar to this case, that counsel has a right to use the power of the courts, through the Rules of Civil Procedure, to find a client who could then intervene as a plaintiff, in a proposed class action, which has no party plaintiff, in an effort to find a new class representative. Even were this Court to assume, for purposes of argument, that the complaint set forth a valid cause of action for which relief might be granted, counsel is still proposing to be allowed to prosecute a plaintiff-less lawsuit. If a class had first been certified (even assuming one was located) this outcome would be different as the unnamed members of that class would still be "plaintiffs." As explained in *Walters v. Edgar*, 163 F.3d 430, 432 (7th Cir. 1998):

> The plaintiffs argue that even if they do lack standing, the suit should not have been dismissed but instead other members of the class should have been named as the class representatives. This would indeed have been the proper course if something had happened to deprive the named plaintiffs of standing (or otherwise

to render them inappropriate representatives of the class) *after* the suit had been filed, provided that two conditions were satisfied: that the suit had been certified as a class action, which would make the unnamed class members parties to the suit unless and until they opted out; and that at least one of these unnamed class members had standing.

In this matter, the underlying plaintiff and purported class representative by his own testimony: (1) could not meet the elements of his own complaint; (2) did not meet his own class definition; and (3) suffered no damages or compensable injury. Under these circumstances there could be no means to prosecute any claim, much less certify a class. We cannot find any fault with the trial court's analysis and we can therefore not say that it abused its discretion.

Swearingen's third assignment of error fails for much the same reason. All allegations of compensable injury found in his complaint were disproven by his own testimony. That necessary element is missing from all his causes of action.

For the foregoing reasons, the judgment of the Fayette Circuit Court, which dismissed Swearingen's original class action complaint and denied Swearingen's contemporaneous motion to file an amended class action complaint, is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Mason L. Miller
William C. Rambicure
Lexington, Kentucky

ORAL ARGUMENT FOR
APPELLANT:

Mason L. Miller
Lexington, Kentucky

BRIEF FOR APPELLEE
HAGYARD DAVIDSON MCGEE
ASSOCIATES, PLLC:

Sheryl G. Snyder
Nolan M. Jackson
Keith Moorman
Lexington, Kentucky

BRIEF FOR APPELLEE
DEAN DORTON ALLEN FORD,
PLLC:

W. Craig Robertson III
Courtney R. Samford
Thomas E. Travis
Lexington, Kentucky

BRIEF FOR APPELLEES
DR. MICHAEL T. HORE, DR.
DWAYNE RODGERSON, AND
DR. MICHAEL SPIRITO:

Michael P. Casey
Sarah E. Boggs
Lexington, Kentucky

BRIEF FOR APPELLEE
DR. ROBERT J. HUNT:

Thomas W. Miller
Elizabeth C. Woodford
Lexington, Kentucky

ORAL ARGUMENT FOR
APPELLEES:

Michael P. Casey
Courtney R. Samford
Lexington, Kentucky